**BURKHARDT et ux. v. LIEBERMAN et al.**

No. 10982.

Court of Civil Appeals of Texas. Galveston.

May 30, 1940.

Rehearing Denied July 3, 1940.

Walter F. Brown and H. Fletcher Brown, both of Houston, for appellants.

W. E. Daly and Charles L. Terry, both of Houston, for appellees.

CODY, Justice.

This suit was brought by appellants, Otto Burkhardt and wife, Mary, in trespass to try title, against George Lieberman and O. C. Riedel, to 71.6 rural acres in Harris County, near Houston, and a vacant lot in Houston. The rural property consists of three contiguous tracts of 10 acres each; of a tract of 25 acres; one of 16 acres; and one of 6/10 of an acre.

It was established at the trial that 71.6 acres formed a part of appellants' homestead at the time, January 28, 1932, Otto Burkhardt executed a deed of trust thereon to secure the First National Bank of Houston in the payment of two notes; one of $1,300, and one for $1,500. On September 24, 1935, Otto Burkhardt executed a new deed of trust, being in renewal of the former deed of trust. The original, and the renewal deeds of trust each contained the statement and covenant that the property thereby covered, which is here involved, formed no part of his homestead. On March 25, 1932, appellants made their sworn disclaimer of any homestead rights in the property, and designated as their homestead a 27½-acre tract on which they resided in a residence situated thereon, which was located about a mile and a half from the 71.6 acres, and across the Katy Road therefrom. These instruments were recorded in the deed records of Harris County. The affidavits are copied and appended hereto.[1] Burkhardt failed to pay his notes when they matured, and the bank's trustee foreclosed under the renewal deed of trust, on April 6, 1937, and appellee Lieberman bought the property in for $3,300, subject to a superior lien on the 25-acre tract of approximately $1,300, and subject to delinquent taxes of about $900. Burkhardt surrendered possession to Lieberman.

Appellant Burkhardt was a nurseryman by occupation. He owned both the 25-acre tract and the 16-acre tract in 1921, at the time he bought the three 10-acre tracts. And at the time he bought the three 10-acre tracts, in 1921, he lived in a residence which was situated on the 16-acre tract; from this, in 1921, he moved to the residence situated on the 27½-acre tract. He subsequently lost title to the 27½-acre tract, but continued to live thereon, and did so at the times material to this case.

Appellee Lieberman was a nursery customer of Burkhardt, and had purchased nursery stock from appellants' home place, the 27½-acre tract, and from his place of business on Fannin Street in Houston. In March, 1937, Otto Burkhardt told Lieberman that he was going to be foreclosed on by the bank, and asked Lieberman if Lieberman knew where he might borrow the money to refinance the loan. At that time he told Lieberman that the property involved was not his home, and arranged to have Lieberman come out to see it. Two days later he showed Lieberman the property here involved. Lieberman testified that had Burkhardt intimated to him in any way that he claimed the land as a homestead, or that if he had had any knowledge it was such, he would not have bought it. Lieberman further testified, and his testimony is not disputed, that after he made the inspection of the land, he discussed the title of the land with Burkhardt, who told him the bank had made him have the title straightened up when it took the deed of trust, and referred him to Mr. Burkhardt's attorney, and to the bank. Both the bank and the attorney told Lieberman the lien was all right, and the disclaimers as to homestead and all other matters in the bank's file were exhibited to him.

Appellee Riedel lived near the property here involved. On February 15, 1938, some nine to ten months after Lieberman had bought in the 71 acres at the trustee's sale of April 6, 1937, and had same peaceably surrendered to him by Burkhardt, Riedel bought the three tracts of 10 acres each from Lieberman for $4,250 cash. This he did after the title had been approved by his attorney.

The answer filed by Lieberman is quite lengthy. In addition to general demurrer, general denial, and plea of not guilty, it pled in substance the facts hereinabove set

[1] See p. 291.

forth. Following the allegations of the facts and circumstances connected with his purchase of the property occurs this pleading which we quote from said answer: "Premises considered, this defendant, George Lieberman, shows that he is a purchaser in good faith and for value of the land * * * without notice of any right, title, lien, claim, or equity in or on the part of the plaintiffs * * *, and further this defendant shows that by virtue of the allegations herein made the plaintiffs, Otto Burkhardt and wife, Mary Burkhardt, are estopped to claim any right, title or equity in and to all or any part of said land * * *." The answer then alleges certain improvements made in good faith, without knowledge of appellants' claim to the property, and their value. It further sets up his purchase and ownership of a superior outstanding vendor's lien and superior title against the 25-acre tract for $1,300, and that the indebtedness is past due, and his election to rescind the sale and recover the superior title. The answer of Lieberman further sets up a claim for taxes that he has paid, and a subrogation to the lien to secure their payment, and other details in connection with his claim not necessary to be set forth with particularity.

The answer of appellee Riedel in addition to a general demurrer, a general denial, and a plea of not guilty, contains a disclaimer to all of the land sued for except the three tracts of 10 acres each which he bought from Lieberman. His answer sets up that on February 15, 1938, he bought the three 10-acre tracts for a valuable consideration from Lieberman, and that at the time of such purchase he was furnished with an abstract of title which he caused to be examined by a competent attorney, who advised him that the title of Lieberman was good and merchantable; and that, he, Riedel, found Lieberman in possession of such land under a deed duly recorded, and accepted from him a warranty title. He pled that he had paid $4,250 cash for the land. Further, that appellants were not residing upon the land; and that the trustee's deed which conveyed such land to defendant Lieberman had been recorded for about a year and no suit had been filed to recover same when he bought; that there was no instrument of record which would lead one to believe that plaintiffs were claiming or even intended to claim the same or any portion thereof. And that the deed records of Harris County showed a valid fee-simple title to the three 10-acre tracts to be vested in Lieberman; he pled the deed of trust, under the disclaimer of homestead rights and covenant against homestead use; he also pled the sworn disclaimer of homestead, and homestead designation; he pled the renewal, the failure to pay the notes, and the foreclosure. He pled that he had had no notice or knowledge of their homestead claims, and that if he had received any, he would not have bought. Riedel further pled that appellants are estopped to claim the three 10-acre tracts, and that he is a purchaser for value without notice, and is entitled to judgment accordingly.

In reply, the appellants filed a first supplemental petition, demanding strict proof. They pled that they were willing to pay Lieberman the amount of the vendors' lien note secured on the 25 acres, and with its superior title, and that they tender whatever amount the court determines is necessary to reimburse Lieberman for the amount paid out on the note, and that they offer to do whatever equity the court requires of them in connection with this suit.

The case was submitted on special issues, in response to which the jury found:

1. The 71 acres of land were a part of the homestead of Otto Burkhardt and wife on January 28, 1932 (the date of the original deed of trust).

2. That the 9/10-acre tract was also at that time a part of their homestead.

3. That the 71 acres were also a part of their homestead on September 24, 1935 (the date of the renewal deed of trust).

4. The same finding as the foregoing was made with respect to the 9/10-acre tract.

5. That when Lieberman purchased the property, he did not believe the statement in the deed of trust of September 28, 1932.
* * *

10. That a person of ordinary prudence situated as was Lieberman would not have bought the property except for the statement in the deed of trust of September 28, 1932.

11. That when Lieberman purchased the property he believed the statement in the deed of trust of September 24, 1935, that the property was not a part of the homestead of appellants.

12. That a person of ordinary prudence situated as was Lieberman would have believed such statement to be true.

13. That in purchasing the property Lieberman relied on such statement.

14. That a person of ordinary prudence, similarly situated, would have relied on such statement.

15. That Lieberman would not have bought the property but for such statement.

16. And that a person of ordinary prudence situated as Lieberman would not have bought the property but for such statement.

17. That Lieberman, at the time he purchased the property, was led to believe from the statement by Otto Burkhardt, as to his homestead contained in his affidavit, that the property was not a part of the homestead of himself and Mrs. Burkhardt on September 24, 1935.

18. That Lieberman relied on the statement in such affidavit.

19. That a person of ordinary prudence, situated as was Lieberman, would have relied on such statement.

20. That Lieberman would not have bought the property except for such statement.

21. A person of ordinary prudence situated as Lieberman would not have bought the property but for such statement.

22. That when Lieberman purchased the property involved in this suit he was led to believe from the statement by Mary Burkhardt, as to homestead, contained in her affidavit, that the property was not the homestead of Otto Burkhardt and herself on September 24, 1935.

23. That in purchasing the property in question Lieberman relied on such statement.

24. That a person of ordinary prudence, situated as was Lieberman, would have relied on such statement.

25. That Lieberman would not have bought the property but for such statement.

26. That a person of ordinary prudence situated as Lieberman would not have bought the property except for such statement.

27. That the facts and circumstances surrounding Lieberman at and prior to the trustee's sale on April 6, 1937, were such as to put a reasonably prudent person upon inquiry as to whether the 71 acres was a part of the homestead of Otto Burkhardt on January 28, 1932.

28. That such inquiry, if diligently prosecuted, would have led Lieberman to the knowledge that said property was a part of the homestead of Otto Burkhardt and wife on January 28, 1932.

29. That the facts and circumstances surrounding Lieberman at and prior to the trustee's sale on April 5, 1937, were such as to have put a reasonably prudent person upon inquiry as to whether the 71.6 acres formed a part of the Burkhardt homestead.

30. That such inquiry, if diligently prosecuted, would have led Lieberman to the knowledge that said property was a part of the Burkhardt homestead.

31. That at the time Riedel purchased the three 10-acre tracts he took such steps to ascertain the status of the title to the land he was purchasing, as a person of ordinary prudence situated as he was would have taken under the same or similar circumstances.

32. That at the time Riedel purchased the three 10-acre tracts involved in this suit, he had no notice of the homestead claims thereto of the Burkhardts.

33. That Riedel would not have purchased the three 10-acre tracts if he had had notice of the homestead claims of appellant at such time.

34. (It is not necessary to give this answer).

The court, after finding that the answers of the jury to special issues Nos. 10, 27, 28, 29 and 30 are immaterial to the determination of the case, because of the findings on the other special issues, rendered judgment on the verdict that appellants take nothing from appellees, and adjudged and decreed that the title of Lieberman as to the 25-acre tract be quieted. And from this judgment appellants have duly appealed.

Appellants depend for reversal of the judgment of the trial court primarily on the line of cases represented by Texas Land & Loan Company v. Blalock, 76 Tex. 85, 13 S.W. 12, and Nixon v. Hirschi, Tex. Com.App., 132 S.W.2d 89. The Blalock case holds that no statement in an application for a loan, and no recitals or declarations made by owners of homestead property, that such property is not homestead property will authorize a person dealing with them to fail to take notice of actual, open, and exclusive possession of such property, and "when this, concurring with interest in the possessor, makes it homestead, the lender stands charged with notice of that fact, it matters not what declarations to the contrary the borrower may make." [76 Tex. 85, 13 S.W. 13.] It was

stated in the Hirschi case, "Hirschi (the mortgagee) himself testified that the abstract showed the dedication of the homestead on property other than that given as security for this loan, and that he did not 'go to anything except the records.' The mere record representations made by the plaintiffs as to homestead, do not, without more, estop them from asserting their homestead rights under the constitution." [132 S.W.2d 93.] (Citing the Blalock case.)

■ One of the outstanding features of the fundamental law of Texas is its denial to the husband and wife of the common-law right to mortgage homestead property. Naturally the prohibition against mortgaging homestead property to borrow money could not have the effect of removing the temptation to try to do what is thus prohibited. Every money lender in Texas knows that a mortgage on a homestead is invalid, and that there is always danger that a borrower will attempt to secure his indebtedness with an invalid lien on homestead property. Knowing this, one who takes a mortgage on real estate in Texas is in no position to assert an estoppel against a mortgagor whose possession of the property on which he purports to place a mortgage was sufficient to affect the world with notice that the same was being possessed at the time of the purported mortgage so as to make it homestead property. That is the sum and substance of the holding in the Blalock case.

■■ Appellee Lieberman did not take a mortgage from appellants on their homestead property. If it can be said that a prospective purchaser of real estate at a trustee's sale is put upon inquiry as to whether the property to be sold was homestead property when it was mortgaged, we know of no reason why such prospective purchaser is not justified in accepting the statement of the owner, that the property to be sold at an advertised trustee's sale is not homestead property. At the time Lieberman was contemplating buying the property he asked Burkhardt if the property (to be sold at the trustee's sale) was homestead property, and at that time appellants had the means at hand of readily preventing such sale, if the property was in fact homestead. All they had to do was to enjoin the sale. But instead of preventing the sale, Burkhardt told Lieberman that the property was not homestead property, and referred him to the bank, and to appellants' attorney. From the information thus obtained, including the affidavits of both appellants, Lieberman was undoubtedly led to believe, and authorized to believe, that the apparent power of sale with which Burkhardt had clothed the trustee was valid, and thus induced by appellants to buy the property at the trustee's sale. " 'A recognized proposition as to estoppel in pais is that if in the transaction itself, which is in dispute, a party has led another into the belief of a certain state of facts by conduct of culpable negligence calculated to have that result, and such culpable negligence has been the proximate cause of leading, and has led, the other to act by mistake upon such belief to his prejudice, he cannot be heard afterward as against that other to show that the state of facts referred to did not exist. Since in order to create an equitable estoppel it is not necessary that there should be an intentional moral wrong, negligence, when there is a duty cast upon a person to disclose the truth, may supply the place of intent, where the effect of such negligence is to work a fraud on the party setting up the estoppel.' Cravens v. Booth, 8 Tex. [243], 247, 58 Am.Dec. 112; Klein v. Glass, 53 Tex. [37], 44; Eylar v. Eylar, 60 Tex. 315; Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258; Hurt 'v. Cooper, supra [63 Tex. 362]; Heidenheimer [Bros.] v. Stewart, supra [65 Tex. 321]; Love v. Breedlove, 75 Tex. [649], 652, 13 S.W. 222; National Bond & Mortgage Corp. v. Sam Davis et al. (Tex.Com.App.) 60 S.W.(2d) 429; First Texas Joint Stock Land Bank v. Chapman (Tex.Civ.App.) 48 S.W.(2d) 651." Sanger v. Calloway, et ux., Tex.Com.App., 61 S.W.2d 988, 994.

It was clearly Burkhardt's duty, when he knew that Lieberman relied on the apparent power of sale with which he had vested the trustee, and in such reliance would buy the property at the trustee's sale, to have prevented the sale. While it is perfectly true, under the Blalock case, that no estoppel by mere representation can operate in favor of one who takes a mortgage from one living on property, it is not true that an estoppel by mere representation cannot operate in favor of an innocent purchaser for value. Burkhardt was under no possible pressure or temptation to state to Lieberman that the property was not homestead, and Lieberman had no reason not to accept such statement. It could be no possible advantage to Burkhardt to deceive

Lieberman about the homestead status of the property, and Burkhardt could gain no possible advantage by failing to assert the invalidity of the lien before the trustee sold the property at the foreclosure sale to any innocent purchaser for value. Since Burkhardt had clothed the trustee with apparent authority to sell out the property covered by the deed of trust, on the conditions specified in the deed of trust, and had caused Lieberman to believe, by referring him to the affidavits, etc., that the property was not homestead property; and since Burkhardt had the means at hand to prevent the sale, yet he suffered the trustee to exercise the apparent power of sale with which he had clothed him, and thereby caused Lieberman to part with his money; and since appellants yielded Lieberman peaceable possession, appellants are estopped now to assert that the property is homestead. They could have as readily asserted the homestead character of the property before they suffered Lieberman, on the faith of their representations, to buy the property, as they can now assert it; and they could then have asserted it without injustice. But to permit them, after they have suffered an innocent purchaser for value to buy the property, to assert that the trustee had no actual power to sell the property, after having clothed him with the apparent power, would be unjust.

The same provision of the constitution which makes mortgages on the homestead void, also makes all pretended sales of the homestead void. Yet it is the settled law of this state that where a wife and husband executed a deed which simulates a conveyance of their homestead, so as to create a simulated vendor's lien thereon, purporting to secure the payment of vendor's lien notes, they are estopped to assert their homestead right against an innocent third person who relies upon the appearance thus created. Heidenheimer Bros. v. Stewart, 65 Tex. 321; National Bond & Mortgage Corp. v. Davis, Tex.Com.App., 60 S.W.2d 429. In the case of Guaranty Bond State Bank v. Kelley, Tex.Com.App., 13 S.W.2d 69, 71, which dealt with a simulated vendor's lien, the court said: "Here Mrs. Kelley contributed in an active, affirmative way to the perpetration of a legal fraud. Her intentions may have been, and no doubt were, perfectly harmless and with no actual purpose to wrong any one. But in law her conduct amounted to an affirmative representation that she and her husband had, in good faith, conveyed the homestead and reserved the lien thus assigned to the bank. To permit her now to plead the invalidity of the transaction would be to permit a legal fraud. *Having actual notice of the execution of the deed retaining the lien, the measure of plaintiff in error's diligence was complete, and it was under no obligation to make further inquiry of defendants in error."* (Italics ours).

The principle on which owners of homestead property who have made a pretended sale of it in order to create a simulated vendor's lien thereagainst are estopped to assert the invalidity of such simulated vendor's lien is this,—that having clothed the pretended grantee with apparent authority to give notes secured by vendor's lien against their homestead property, they cannot show, as against an innocent purchaser, that the apparent authority, with which the pretended grantee had thus been clothed, is invalid. The case for estoppel against appellants is upon the same principle; after having clothed the trustee with the apparent power to sell the land, as not being homestead property, and suffering an innocent purchaser for value to buy under such power, appellants will not now be permitted to show the invalidity of such power.

The argument that the rule of the Bialock case should apply to the situation of Riedel is weaker, if anything, than the argument that it should apply to that of Lieberman. At the time Riedel purchased the three 10-acre tracts, Lieberman was in peaceable possession thereof. He was in possession, as heretofore stated, because appellants had clothed the trustee for the bank with apparent authority to sell same to pay off the notes which the deed of trust purported to secure. In other words, Lieberman was in peaceable possession under and by virtue of instruments that were recorded which, at least of record, vested in him a good and merchantable title thereto. It was apparent of record that appellants had suffered the trustee to exercise the power of sale provided for in the deed of trust. This was entirely consistent with the representation of appellants that they owned no homestead rights in the three 10-acre tracts; it was entirely inconsistent with the ownership of such homestead rights. Appellants had the means at hand, by injunction—or even by warning purchasers—to have readily prevented the exercise of the apparent power of sale by

the trustee with which they had clothed such trustee. It would be a legal fraud on Riedel, after appellants had, in effect, vested in Lieberman the apparent fee-simple title to the three 10-acre tracts, and yielded him peaceable possession, and permitted him to enjoy such possession for nearly a year, under recorded instruments showing a fee-simple title in him, to allow appellants to show that the apparent title, with which they had vested Lieberman, was in fact void; this after Riedel had purchased the three 10-acre tracts at a purchase price of more than $4,000. Riedel pled, and the jury found upon sufficient evidence, that Riedel was an innocent purchaser for value. The fact that Riedel was a neighbor of appellants and was in a position to know that they were making a use of the premises which fixed on them a homestead character at the time the deed of trust was given in 1932 does not prevent him from being an innocent purchaser for value of the property from Lieberman in 1938. Riedel was not bound to believe that the land was exempt to appellants contrary to their representations and actions. After appellants suffered the deed of trust lien to be foreclosed, which was utterly inconsistent with the homestead character of the land covered thereby, and suffered Lieberman to hold peaceable possession under instruments vesting him with an apparent fee-simple title, Riedel could qualify, to say the least, as an innocent purchaser for value. The jury, in effect, found that Riedel was an innocent purchaser for value, in response to special issues. Riedel's pleadings and the evidence were sufficient to authorize the submission of those special issues. And the evidence is sufficient to support such findings.

The trial court found that the answers of the jury to the special issues Nos. 10, 27, 28, 29 and 30 are each and all immaterial to the determination of this cause. Special issue No. 27 is copied in full: "Do you find from a preponderance of the evidence that the facts and circumstances surrounding Lieberman at and prior to the Trustee's sale on April 6, 1937, were such as to have put a reasonably prudent person on inquiry as to whether the 71 acres of land involved in this suit was a part of the homestead of Otto Burkhardt and wife on January 28, 1932. Answer 'Yes' or 'No'."

The jury answered "Yes". However, the undisputed proof shows that Lieberman did inquire of Burkhardt if the 71 acres were homestead property, and was informed that it was not. That is, if he was placed on inquiry, he inquired. And as Lieberman intended to become a competitive purchaser at the sale of the property if it were not homestead property, and this was known to Burkhardt, an inquiry made by Lieberman of Burkhardt, taken together with the other facts and circumstances, was all that was required of him. It is quite evident that the other special issues, of the group just referred to, were referred to the jury upon the wrong theory—upon the theory that a purchaser at a foreclosure sale owed the same duty to investigate the homestead character of the property to be sold as would a money lender before taking a lien. At the cost of some repetition, the difference between the situations of the two has been made manifest. The borrower is under a strong temptation to misrepresent the status of his property as being exempt, in order to obtain a loan. But if he is to assert the homestead character of his property to avoid a deed of trust lien he has given thereon he ought to assert it before innocent third parties have bought it under the deed of trust. When Lieberman, whom Burkhardt knew intended to buy at competitive sale if the property were not homestead, asked him if the property was homestead, it was a legal fraud to tell him it was not. Lieberman had a right to rely on the answer, taken together with the other showing. The court was correct, therefore, in holding the answers to special issues 27–30 immaterial.

Both of the appellees have pled the facts upon which they have respectively invoked an estoppel against appellants, in detail. And an estoppel arises in favor of the appellees, respectively, as a matter of law, upon the proof of such facts. In 17 Tex. Jur. pp. 146–147, it is said: "No intendments are made in favor of the plea; the pleader must allege the facts which are essential to the existence of estoppel with particularity and precision. To be proof against special exceptions, the pleading must apparently have averments to the effect that the party was deceived or misled, to his prejudice; but as against a general demurrer, an averment of the facts is, according to some authorities, all that is required." In the case of Shaw v. Borchers, Tex.Com.App., 46 S.W.2d 967, 970, it was held: "It is urged that plaintiff in

error is not in position to assert an estoppel against defendant in error because it did not specially plead such issue. It is ordinarily the rule that a party cannot claim the benefit of an estoppel without specially pleading the same. But the rule is otherwise if the matter constituting an estoppel is apparent upon the face of the pleadings." (Citing authorities.)

If we are correct in holding that the pleadings of appellees are sufficient to have warranted the court in submitting the special issues to the jury; and in holding the evidence is sufficient to support the jury's findings; and in holding that appellants are estopped to claim the invalidity of the trustee's sale; and in holding that the appellees are found by the verdict of the jury to be innocent purchasers for value, the other matters become immaterial.

Believing that the judgment of the trial court is correct, it is affirmed.

Affirmed.

### On Motion for Rehearing.

Appellants have vigorously assailed our former opinion in 168 assignments of error.

■ As appears from our original opinion, the dwelling house in which appellants resided at all times pertinent to this case was on land which was separate and disconnected from the land which is involved in this suit. Now it is perfectly clear that it is possible for the owners of a rural homestead to possess and use land in connection with their homestead, and yet own no homestead rights therein. In what way did the possession of the land here involved put Mr. Lieberman on notice that it was a part of the homestead of appellants? Of course if the land here involved were one tract, and appellants resided in a dwelling house thereon, Lieberman would indeed have had to close his eyes in order to avoid the knowledge that the property was homestead property, because the use of the land so possessed would have absolutely been inconsistent with anything except that it formed a part of their homestead. As stated in Eylar v. Eylar, 60 Tex. 315, 319, "It would seem that the sole office which possession performs, in the matter of notice, is to put a person desiring to purchase upon inquiry, and that it has no effect in determining what the inquiry shall be, or of whom it shall be made." But under the facts of this case Lieberman was at liberty to believe that appellants had not committed a felony by falsely swearing that the land here involved formed no part of their homestead, if it did form a part thereof. No law required appellants to hold all their rural property up to 200 acres as a part of their homestead; and, it would have been possible that appellants might have owned other property making up their complement. In any case an affidavit is a very solemn form of asserting a fact, and false swearing is a felony. The possession of the land here involved by appellants, though it may have been in fact such as to render such land a part of their homestead, was not such as necessarily did so to affect a prospective purchaser with notice of its homestead character, contrary to affidavits by appellants, any more than the possession of the owners in the Eylar case, supra, affected prospective purchasers with notice that the interest of those in possession was contrary to the record showing of their interest.

■ We stated in our original opinion, in effect, that the deed of trust given by Mr. Burkhardt to the bank was void, and that the apparent power of sale contained therein was void, and any exercise of it could have been enjoined by appellants. Such a statement by us was not necessary to the disposition of the case, and went too far. Whether or not the power of sale contained in said deed of trust was valid, or void, or merely voidable, we leave undecided. But certainly if the deed of trust and the power of sale contained therein were void, as appellants here claim, such power of sale was void ab initio. And appellants cannot, after clothing the trustee with apparent power of sale, and after having stood idly by and permitting such power of sale to be exercised whereby a third party parts with his money on the faith that such trustee had the power with which he was apparently clothed by appellants, assert, as against such third party, that such apparent power of sale was in fact invalid. Even in cases where one of two persons equally entitled to consideration, as far as their purposes are concerned, must suffer from the delinquency of a third, the loss more properly falls upon him, who, having readily at hand the means of protection, has failed to avail himself of them. Sackenreuther v. Winston, Tex.Civ.App., 137 S.W.2d 93, 97, writ refused. Appellants contend, in effect, that they swore falsely that the land here

involved was not their homestead. Can it be said that they are equally entitled to the same consideration that should be accorded to the victim of their deceit?

Appellants' motion for rehearing, except as to a typographical error which it helpfully calls to our attention and which has been corrected in the original opinion, is overruled.

Motion refused.

## Exhibit

"The State of Texas, County of Harris

"Before Me, the undersigned authority, on this day personally appeared Mary Burkhardt, wife of Otto Burkhardt and his wife, well known to me, who having been her oath states: by me first duly sworn on their oaths state

I am                                 those

"That we are the owners of that certain tracts or parcels of land lying and being situated in the County of Harris, State of Texas, described as follows, to-wit:

"Four (4) certain tracts of land in the A. H. Osborne Survey of Harris County, Texas, aggregating 10 acres, 10 acres, 10 acres, and 16 acres, respectively; also 25 acres, more or less, out of the Robert Vince Survey in Harris County, Texas, said tracts in each instance being fully described by metes and bounds in deeds to affiant respectively.

"II.

"That neither said property nor any part is now                              me thereof has ever been used by us as a residence or business homestead, or for homestead purposes, and that neither said property nor any part thereof is now a                                             me home or place of business or claimed by us as a residence or business homestead, or for residence or business homestead purposes.

"III.

I
"That we have a home and designated homestead and now reside in the following described property to-wit: 27-½ acres, more or less, out of the A. H. Osborne Survey, Harris County, Texas, located on the Katy Road about 8 miles Northwesterly from the City of Houston, being the land upon which I have my nursery stock and being the same land purchased by me and described in deed from August Neuen of Harris County, Texas; that the last named I property is the only real estate in which we claim a right of homestead or of exemption under the laws of the State of Texas; that I we have no intention of using the property first above described or any part or parts thereof in any way whatsoever for business or residence homestead purposes and hereby solemnly renounce all homestead and exemption rights thereto.

I
"We make this affidavit and sworn representation with the full knowledge that 'The First National Bank of Houston, Houston, Texas, Trustee, will advance certain sums me to us in the form of a loan, the payment of which is to be secured by a lien on the property first hereinabove described and it my is our purpose and plan that the payment of                                  me          my said money shall be made to us for our account by said bank on faith in the truth of the statements and representations herein made.

"Mary Burkhardt
"Otto Burkhardt

"Sworn To And Subscribed Before me, the undersigned authority, this the 25th day of March, A. D. 1932.

"K. E. Wright
"Notary Public in and for
"[Seal.]         Harris County, Texas.

"Sworn To And Subscribed Before me, the undersigned authority, by Otto Burkhardt, who makes oath to the above in substance and in fact, this 5th day of August, A. D. 1933.

"[Seal.]          K. E. Wright
"Notary Public in and for
Harris County, Texas."