## Scott et al. *v.* Waynesburg Brewing Company.

*Judgments—Lien—Expiration — Sci. fa. to revive — Real estate —Receivers—Equity.*

Where the real estate of a corporation, subject to the lien of a judgment, has passed into the hands of a receiver and thereafter the lien of the judgment expires through the failure of the judgment creditor to revive it, such judgment loses its original priority, and the owner thereof is not entitled to a preference in the distribution of the assets of the corporation. The appointment of a receiver does not do away with the legal requirement to revive the judgment in order to continue its lien.

Argued Oct. 2, 1916. Appeal, No. 150, Oct. T., 1916, by Citizens National Bank of Waynesburg, Pennsylvania, from decree of C. P. Greene Co., No. 160, in equity,

dismissing exceptions to report of auditor, in case of J. M. Scott, S. C. Adamson, George B. Lippincott and Joseph C. Carpenter v. Waynesburg Brewing Company. Before POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Bill in equity for the appointment of a receiver.

Exceptions to report of S. M. Smith, Esq., auditor. Before IRWIN, J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. The Citizens National Bank of Waynesburg, Pennsylvania, appealed.

*Errors assigned* were in dismissing exceptions.

*Frank W. Downey* and *James J. Purman,* with them *A. F. Silveus,* for appellant.—The judgment of the Union National Bank of Huntingdon, Pennsylvania, lost its priority because the judgment plaintiff failed to revive it before the appointment of the receiver: Stirk's App., 2 W. N. C. 673; Reynolds' App., 1 Kulp 356; Ferrance's Admr. App., 107 Pa. 180; Jordan & Porter's App., 107 Pa. 75; Duffey v. Houtz, 105 Pa. 96.

It was not within the power of any court to relieve the judgment creditor of his duty to revive the lien of the judgment: Ferrance's Admr. App., 107 Pa. 180; Shaeffer v. Child, 7 Watts 84; Gloninger et al. v. Hazard & Earp, 42 Pa. 389; Stirk's App., 2 W. N. C. 673; Jordan & Porter's App., 107 Pa. 75; Herbst's & Buehler's App., 90 Pa. 353; Kepler et al. v. Erie Dime Savings & Loan Co., 101 Pa. 602; Ebright v. The Bank, 1 Watts 397; Tomlinson's App., 90 Pa. 224; McCalran v. Elliott, 103 Pa. 634; Howes & Bros. v. Dolan et al., 9 Pa. Superior Ct. 586; Ramsey v. Shreiner, 13 Pa. Dist. Rep. 641; Leidich's Est., 11 Pa. Dist. Rep. 565; Riland v. Eckert, 23 Pa. 215; Snively's Est., 9 Pa. C. C. Rep. 422; Kittanning Ins. Co. v. Scott et al., 13 W. N. C. 54.

*Thomas S. Crago,* of *Crago & Montgomery,* for appellee.—The appointment of the receiver fixed the status of all the parties concerned: Gluck & Becker, Rec's. of Corp. 2d ed. p. 19; United States Brick Co., to use, v. Middletown Shale-Brick Co., 228 Pa. 81; Blum Bros. v. Girard Nat. Bk., 248 Pa. 148.

OPINION BY MR. JUSTICE STEWART, January 8, 1917:

At the suit of certain creditors the Waynesburg Brewing Company, a corporation, was adjudged insolvent on the 7th day of February, 1912, and on the same day the court appointed a receiver to take over and administer the insolvent estate.  Among other judgments which were existing liens upon the real estate of the company was a judgment standing in the name of the Union National Bank of Huntingdon, to the use of I. N. McNay, for the sum of three thousand dollars, which had priority of lien.  Execution was outstanding on this judgment when the receiver was appointed; the real estate had been levied and a writ of venditioni exponas was in the sheriff's hands when the execution was arrested by the court and the sheriff enjoined against proceeding with the sale.  The real estate encumbered as above was sold by the receiver May 21, 1913, under an order of sale granted April 8, 1912, and which had been continued from term to term.  No writ of scire facias having been issued meanwhile on the Union National Bank judgment, its lien expired July 24, 1912.  Notwithstanding this fact, the court below in the proceeding distributing the converted estate to and among the creditors, allowed this judgment its original priority, on the ground that having had priority of lien over the other judgments which were liens on the same property when the receiver was appointed, it retained such priority and no revival was required to this end, because on that day the property passed into the custody of the law and what transpired subsequently could neither modify nor enlarge the rights of creditors.

The error here consists in applying a general rule in equity to a particular situation governed by statutory enactment. Our several statutes governing the lien of judgments are so direct and imperative that they admit of neither modification nor suspension, except at the hands of the legislature; they are so explicit in terms that no court can mistake their meaning, and they are so imperative that the court cannot extend relief when their requirements have been overlooked or disregarded. First, we have the Act of April 4, 1798, 3 Sm. L. 331, Sec. 2, which provides as follows: "No judgment hereafter entered in any court of record within this Commonwealth, shall continue a lien on the real estate of the person against whom such judgment may be entered, during a longer term than five years from the first return day of the term of which such judgment may be so entered, unless the person who may obtain such judgment, or his legal representatives, or other persons interested, shall, within the said term of five years, sue out a writ of scire facias to revive the same." This is followed by the amending Act of March 26, 1827, P. L. 129, which in terms permits the issuing of a writ of scire facias for revival within the period of five years notwithstanding the date of payment of the money for which the judgment was entered may not have arrived, and this significant provision follows: "And moreover, no order or rule of court, or any other process or proceeding thereof, shall have the effect of obviating the necessity of the revival, in manner herein prescribed, of any judgment whatever." Then comes the Act of June 1, 1887, P. L. 289, which provides as follows: "All judgments entered in a court of record in this Commonwealth, or revived in manner prescribed by this act, or the act to which this is a supplement, shall continue a lien on the real estate of the defendant for the term of five years from the date of entry or revival thereof; and no judgment shall continue a lien on such real estate for a longer period than five years from the day on which such judgment may be

entered or revived, unless revived within that period by agreement of the parties and terre tenants filed in writing, and entered on the proper docket, or a writ of scire facias to revive the same be sued out within that period, according to the provisions of the act to which this is a supplement......Nor shall the revival of such judgment by agreement as aforesaid or the issuing of a scire facias, either with or without entry of judgment thereon, have the effect of continuing such lien for a longer period than five years from the day on which it may be entered or revived, or such scire facias may have issued." Here is no room left for the operation of any equitable rule that would extend the lien of any such judgments beyond the statutory period, except as the statutory conditions have been met.   The existence, validity and extent of a judgment lien are matters purely legal, dependent upon statutory provisions, and if the lien fails at law it cannot be aided in equity: 1 Beach on Modern Equity, Sec. 288.   Again, whenever the rights or situation of parties are clearly defined and established by law, whether it be common or statutory, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim, equitas sequitur legem, is strictly applicable:   Magniac et al. v. Thompson, 56 U. S. 281.   And again, courts of equity are as much bound by positive rules and general maxims concerning property as are courts of law, and in the administration of assets equity does not interfere with absolute legal priority: Meech v. Allen, 17 N. Y. 300.   In 1 Beach on Modern Equity, Sec. 10, the rule is thus stated: "The maxim that equity follows the law imports, (1), that in dealing with legal rights equity adopts the rules of law, and (2), that in dealing with equitable estates the court applies to them the same rules which govern legal estates.   In the first sense the rule is general and absolute; and whenever the court is dealing with a legal estate, and there is a direct rule of law governing the case in all

its circumstances, the court is as much bound by it as would be a court of law if the case were pending there."

The argument advanced in support of the mistaken view adopted by the learned court itself rests on a mistake of law. There can be no authority for the position taken that the appointment of the receiver operated as a conversion of the real estate into personalty, and that the lien of the judgments then in full force was thereupon divested and the fund substituted for the land. The effort to distinguish between the case of voluntary assignment for the benefit of creditors, where the conversion takes place on the confirmation of the sale, and a receivership, is without force, since in both alike the conversion is by act of law, and the same rule must obtain with respect to each. "A conversion of real estate into personal estate by act of law, differs from a conversion by act of the party. In the latter case, when conversion is the object of the owner, the result is produced as soon as the contract of sale is made. In the former, where payment of debts or partition, and not conversion, is the object, the transmutation is but an unavoidable result of the proceeding, and takes place only when the estate is completely vested in the vendee, and the purchase-money paid or secured." Biggert's Est., 20 Pa. 17.

No excuse avails for failure to revive a judgment in the way provided by statute, least of all the suggestion that the appointment of a receiver suspends such right. It does not so operate. The object in issuing the scire facias is not to obtain a new lien, but to continue an existing one. The process interferes in no way with the possession of the property by the receiver, and the latter not being the owner of the property subject to the lien, is not a necessary party to the proceeding. "The judgment on the scire facias is not, as the court erroneously supposes, a new judgment giving vitality only from that time, but it is the revival of the original judgment, giving, or rather continuing, the vitality of the original judgment, with all its incidents, from the time of its

rendition......In England, the judgment on the scire facias is that the original judgment be revived.  Here, the amount of. the debt is ascertained and judgment given for the sum due; and this unfortunate departure from precedents has given rise to the erroneous notion in the minds of some members of the profession, that judgment on the scire facias is a new and distinct judgment, and not, as it really is, nothing more than the revival of the original judgment, the sum being ascertained for which execution is issued.  If we pay any regard to precedents, the execution ought always to be issued on the original judgment, and not, as is sometimes ignorantly done, on the judgment on the scire facias; an irregularity which ought never to have been tolerated by the courts.  But notwithstanding this deviation from the usual practice, it has never yet been imagined that the law was fundamentally changed." Irwin, Smith et al. v. Nixon's Heirs, 11 Pa. 419.

The judgment in the present case having expired in its lien before the confirmation of the sale made by the receiver, it lost its original priority, and it was error to allow it preference.

The decree is reversed with a procedendo.