First Federal Savings and Loan Association *v.* Swift, Appellant.

Argued November 29, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Harold E. Martin,* for appellant.

*Louis J. Farina,* with him *William E. Chillas, Jr.,* and *May, Grove, Stork & Blakinger,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 1, 1974:

The First Federal Savings and Loan Association of Lancaster was the holder of a mortgage on a parcel of realty in the city of Lancaster. Taxes became delinquent, and, pursuant to the Real Estate Tax Sale Law,[1] the property was sold at a properly advertised and conducted public judicial sale on October 23, 1971. First Federal did not send a representative to the sale. Appellant, Tom Swift, was the successful bidder at the duly-authorized sale and purchased the premises, as statutorily directed, "free and clear of all tax and municipal claims, mortgages, liens, charges and estates of whatsoever kind, except ground rents, separately taxed."[2]

On January 7, 1972, First Federal instituted an equitable proceeding to set aside the judicial tax sale. The court, after a hearing, granted the requested relief. *First Federal Savings & Loan Association v. Swift,* 63 Lancaster L. Rev. 567 (Pa. C.P. 1973). This appeal followed.[3] We reverse.

---

[1] Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101-.803 (1968 & Supp. 1973).

[2] Id. art. VI, § 612, as amended, 72 P.S. § 5860.612 (Supp. 1973).

[3] Swift, believing that appellate jurisdiction was vested in the Commonwealth Court by the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. IV, § 402(4), 17 P.S. § 211.402(4) (Supp. 1973), filed a timely appeal in that court. Jurisdiction is properly in this Court pursuant to § 202(4) of the

First Federal sought equitable relief on the basis of an alleged mistake of fact. Several weeks prior to the October 23 public sale, Robert F. Keener, an employee of the Lancaster Redevelopment Authority, went to the tax claim bureau. Evidently, there had been some discussion between the Authority and First Federal concerning the purchase of the property in question. At the tax bureau, Keener "asked for the list of the tax sale that was coming up," without specifying the list for any particular date. The clerk handed Keener the sale list for October 30, 1971. Keener examined the list and discovered that this particular property was not there listed for sale.

Keener then gratuitously informed First Federal that the realty would not be sold on October 23. Keener was neither agent nor employee of either the tax claim bureau or First Federal. Without investigating further, First Federal relied on Keener's information and advised its attorney not to appear at the October 23 sale. First Federal concedes it had earlier received official notice of the sale.

The chancellor correctly observed that there is no basis at law for setting aside the sale. Proper notice was given, and the sale was held at the court's direction in conformity with the statutory requirements. The court therefore stated that "[t]here is no reason to disturb the sale unless equitable principles are involved which require the granting of relief to the plaintiff." It did, however, believe that equity empowered the court to grant relief despite First Federal's unilateral mistake. The chancellor set aside the sale.[4] In the

Act, 17 P.S. § 211.202(4) (Supp. 1973), and the Commonwealth Court transferred the case. Id. art. V, § 503(b), 17 P.S. § 211.503(b) (Supp. 1973). An appeal so transferred is treated as if timely filed in this Court. Id.

[4] The chancellor also was concerned about the purchase price Swift paid for the property. At the hearing, he stated: "See, the

circumstances of this case, the grant of equitable relief was error.

Even recognizing that a court of equity has broad powers, "[i]t is a mistake to suppose, that a court of equity is amenable to no law, either common or statute, and assumes the rule of an arbitrary legislator in every particular case." Blackstone's Commentaries on the Law 732 (B. Gavit ed. 1941). When the rights of a party are clearly established by defined principles of law, equity should not change or unsettle those rights. Equity follows the law. *Hedges v. Dixon County,* 150 U.S. 182, 14 S. Ct. 71 (1893) ; *Bauer v. P.A. Cutri Co.,* 434 Pa. 305, 253 A.2d 252 (1969) ; *Scott v. Waynesburg Brewing Co.,* 256 Pa. 158, 100 A. 591 (1917) ; *Abrahams v. Wilson,* 134 Pa. Superior Ct. 297, 3 A.2d 1016 (1939) ; see 2 J. Pomeroy, A Treatise on Equity Jurisprudence § 425 (5th ed. S. Symons 1941).

Here, the rights of the parties are specifically established by the Real Estate Tax Sale Law. The statute

---

Court has no benefit of any information like the value of the property or anything else. Now, this may be worth [the purchase price]. If it's worth [the purchase price], then, this is a good sale. If this was a steal, the Court is going to upset the sale, and make it exempt." In his opinion, the chancellor translated this concern into an erroneous finding of "unjust enrichment" and a legal conclusion that "[t]he defendant would receive an unconscionable advantage if the sale were not set aside." *First Fed. Sav. & Loan Ass'n v. Swift,* 63 Lancaster L. Rev. 567, 570 (Pa. C.P. 1973).

The Real Estate Tax Sale Law provides, however, that at a judicial sale the property is to be sold "to the highest bidder," unless the court sets a minimum price not bid. Act of July 7, 1947, P.L. 1368, art. VI, § 612, as amended, 72 P.S. § 5860.612 (Supp. 1973). No minimum bid was here set by the court. It is presumed that the price received at a duly-advertised public sale is the highest and best obtainable. *Plummer v. Wilson,* 322 Pa. 118, 185 A. 311 (1936) ; *Tax Claim Bureau v. Wheatcroft,* 2 Pa. Commonwealth Ct. 408, 278 A.2d 172 (1971). A statutorily satisfactory price having been obtained at public sale, the record furnishes no basis for the chancellor's finding of "unjust enrichment."

is the sole authority governing the sale of this land for delinquent taxes. See *Richards v. Schuylkill County,* 20 Pa. D. & C. 2d 539 (C.P. Schuylkill County 1959), aff'd per curiam, 399 Pa. 552, 161 A.2d 26 (1960).

The statute provides several protections for a mortgagee. Notice must be given,[5] and here it was. A mortgagee, as a "lien creditor of the owner," may stay the sale by entering into an agreement with the tax bureau for the payment of back taxes.[6] First Federal negotiated no such agreement. *Prior* to sale, "any lien creditor" may redeem the property.[7] First Federal did not. Before a property may be sold at judicial sale, it must first be offered at a "tax upset sale," a sale which, unlike a judicial tax sale, does not discharge mortgages.[8] Here, in accordance with the statute, the upset sale was publically advertised for three consecutive weeks in newspapers and by posting on the property.[9] On the advertised date, the real estate was offered for sale but not then purchased. The "regularity or legality of the proceedings of the [tax] bureau in respect to such [upset] sale" may be challenged.[10] No such challenge was made. The judicial sale was then properly advertised and, by court order, the realty was offered for public sale on October 23. First Federal does not challenge the legality or regularity of this sale. Finally, a mortgagee may bid for and purchase premises on which it holds a mortgage. Despite actual notice, First Federal did not appear or bid at the judicial sale. The record reveals that First Federal failed to avail itself

---

[5] Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, art. VI, §§ 602, 611, as amended, 72 P.S. §§ 5860.602, .611 (1968).

[6] Id. § 603, as amended, 72 P.S. § 5860.603 (1968).

[7] Id. art. V, § 501(a), as amended, 72 P.S. § 5860.501(a) (1968).

[8] Id. art. VI, §§ 605, 609, as amended, 72 P.S. §§ 5860.605, .609 (1968).

[9] Id. § 602, as amended, 72 P.S. § 5860.602 (1968).

[10] Id. § 607(d), as amended, 72 P.S. § 5860.607(d) (1968).

of any of the ample opportunities to protect its interest.

On the other hand, after a judicial tax sale the purchaser is statutorily protected. A judicial sale discharges all mortgages and the purchaser takes title "free and clear of all tax and municipal claims, mortgages, liens, charges and estates of whatsoever kind, except ground rents, separately taxed."[11] Moreover, the Real Estate Tax Sale Law specifically provides that "[t]here shall be *no* redemption of any property after the sale thereof."[12]

The rights of all parties to a tax sale are defined and governed by statute. "[W]henever there is a direct rule of law governing the case in all its circumstances, the [equity] court is as much bound by it as would be a court of law . . . ." *Albright v. Albright,* 228 Pa. 552, 77 A. 896 (1910); see 2 J. Pomeroy, supra, §425 at 189-90. Where, as here, the parties' rights are regulated and fixed by a comprehensive scheme of legislation, the maxim "equity follows the law" is entitled to the greatest deference. See, e.g., *Bauer,* supra; *Albright,* supra; *Cloeter v. Superior Court,* 86 Ariz. 400, 347 P.2d 33 (1959); *Milgram v. Jiffy Equipment Co.,* 362 Mo. 1194, 247 S.W.2d 668 (1952); *In re Adoption of McCauley,* 177 Neb. 759, 131 N.W.2d 174 (1964); cf. 1 Pa. S. § 1504 (Special Pamphlet 1973).

Moreover, the "mistake of fact" alleged by First Federal is precisely the sort of mistake which cannot provide a basis for equitable relief. First Federal elected to rely on information volunteered by a person without authority to speak for either the court which ordered the sale or the tax bureau which administered it. It did so at its own risk. The sale had been fully

[11] Id. § 612, as amended, 72 P.S. § 5860.612 (Supp. 1973).

[12] Id. art. V, § 501(c), as amended, 72 P.S. § 5860.501(c) (1968) (emphasis added).

and properly advertised in accordance with the statute. Notice of the judicial sale had also been sent to and received by First Federal, and the realty was correctly listed for sale for October 23. Although the means for determining the accuracy of Keener's gratuitous communication were readily at hand, First Federal admits that it took no steps to confirm this information with the proper authorities. First Federal may not now successfully contend that its own inattentiveness and failure to utilize its statutory protections entitles it to a decree setting aside a lawful sale.

"[C]ourts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised." *Home Owners' Loan Corp. v. Crouse,* 151 Pa. Superior Ct. 259, 263, 30 A.2d 330, 332 (1943). See *Stone v. C.I.T. Corp.,* 122 Pa. Superior Ct. 71, 184 A. 674 (1936); *Lessa v. Staler,* 75 Pa. Superior Ct. 468 (1921); *Felin v. Futcher,* 51 Pa. Superior Ct. 233 (1912); 3 J. Pomeroy, supra, § 856b. Here, First Federal chose to rely on Keener's unverified information rather than avail itself of any of the several statutory procedures designed for its benefit.

In these circumstances, First Federal is not entitled to relief, nor may appellant be deprived of the property he lawfully purchased.

Decree reversed. Costs on appellee.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

———

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I concur in the result reached by the majority. However, I am compelled to express my reasons for so doing, because I cannot agree with the majority's analysis of the issue.

The majority, first of all, fails to recognize the basic premise, here involved, that "gross inadequacy of price is sufficient basis, in itself, for setting aside a sheriff's [judicial] sale (See, Peoples—Pbgh. Tr. Co. v. Blickle, 330 Pa. 398, 199 A. 213 (1938) ) . . . ." *Capozzi v. Antonoplos,* 414 Pa. 565, 570, 201 A.2d 420, 422 (1964). There can be no dispute that the price paid by the appellant, Tom Swift, ($5 plus current taxes of $329.46 for a tract of land valued at nearly $6000) is grossly inadequate.

The majority, although not recognizing the above stated principle, felt the need to rule against the appellee on two distinct grounds. Initially, they state "the rights of the parties are specifically established by the Real Estate Tax Sale Law. The statute is the sole authority governing the sale of this land for delinquent taxes."[1] This statement is clearly an over-reading of the legislative intent behind the passage of this Act.[2] The majority, itself, states: "[t]he statute provides *several* protections for a mortgagee." [Em-

---

[1] The majority cites a common pleas court opinion as authority for this statement. *Richards v. Schuylkill County,* 20 Pa. D. & C. 2d 539, aff'd per curiam, 399 Pa. 552, 161 A.2d 26 (1960). It is granted that the common pleas court stated that "[t]he county having accepted in their entirety the provisions of the Real Estate Tax Sale Law of 1947, supra, as required by that act, it remains and becomes the sole statutory authority governing the sale of lands by the county for delinquent taxes . . . ." *Id.* at 541. However, this statement was made in a completely different context than the majority here implies. The statement was made in response to a contention that the Act of 1947 does not apply and that the earlier legislative acts are applicable. Thus, the common pleas court was merely stating that once counties have adopted the Act of 1947 it becomes the *sole* applicable statutory authority. In no way did the court there, or any other court, state that the Act of 1947 renders all common law in the area void.

[2] Act of July 7, 1947, P. L. 1368, Art. I, §101 et seq., as amended, 72 P.S. §5860.101 et seq.

phasis added.] Thus, implying, and correctly so, that this legislative enactment was merely an attempt to *partially* codify this area of the law. It is my strong belief that the legislature did not attempt to completely fill this area of the law so as to eliminate all remnants of the common law from being applied.

I do not question the majority's rule of law that "whenever there is a direct rule of law governing the case in all its circumstances, the [equity] court is as much bound by it as would be a court of law . . . ," I merely believe that there is no direct rule of law governing this case. Thus, it is my belief that the "gross inadequacy" test has not been eliminated from consideration in delinquent tax sales by the Real Estate Tax Sale Law.

However, I do not come to the conclusion that we should set aside this judicial sale due to the gross inadequacy of the price. I am in full accordance with the majority, that this " 'mistake of fact' . . . is precisely the sort of mistake which cannot provide a basis for equitable relief." I come to this conclusion, despite several cases which indicate that the "gross inadequacy" principle should be applied even if there is a mistake. *Warren Pearl Works v. Rappaport,* 303 Pa. 235, 154 A. 587 (1931) ; and *First National Bank of Sunbury v. Rockefeller,* 333 Pa. 553, 5 A.2d 205 (1939). These cases are clearly distinguishable from the one now before us, because both of these decisions involved "mutual" mistakes, while this case revolves around a "unilateral" mistake of fact. A unilateral mistake of fact has long been recognized as not rendering a contract voidable, Restatement of Contracts §503 (1932). Therefore, I agree with the majority that a court of equity should not relieve a party from the consequences of its own (unilateral) carelessness.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I must dissent from the holding of the majority that a court of equity is powerless to rectify the manifest unfairness of allowing to stand this $5 tax sale of a property worth between $5,000 and $6,000. As Mr. Justice EAGEN has correctly stated in his concurring opinion, *supra* (with which I agree save for the last, and I believe mistaken, paragraph), gross inadequacy of price has long been recognized as a sufficient basis, in itself, for setting aside a sheriff's sale; the fact that the sale was accomplished in conformity with the procedures of the Real Estate Tax Sale Law[1] does not insulate it from timely attack where no competing equities are involved, and the parties can be restored to their original positions. This is such a case.

The opinion of the Court denies relief on the basis of deference to the maxim that "equity follows the law" where, as here, a comprehensive statute prescribes the procedures for conducting a tax sale. But the maxim invoked is narrow indeed. As the eminent authority on equity jurisprudence relied on in the Court's opinion states, "[t]he maxim is, in truth, operative only within a very narrow range; to raise it to the position of a general principle would be a palpable error. Throughout the great mass of its jurisprudence, equity, instead of following the law, either ignores or openly disregards and opposes the law." 2 J. Pomeroy, Equity Jurisprudence 194, §427 (5th ed. Symons, 1941).[2] Had

---

[1] Act of July 7, 1947, P. L. 1368, §101, *as amended*, 72 P.S. §§5860.101 *et seq.*, particularly §601 and following.

[2] POMEROY outlines three main areas where the maxim is generally operative: First, "in the sense of obeying [the law], conforming to its general rules and policy, whether contained in the common or in the statute law", *id.*, §425 at 188; second, "in the sense of applying to equitable estates and interests some of the same rules by which at common law legal estates and interests of a similar kind are governed", *id.*, §426 at 191; third, with regard

the chancellor in this case merely been defining the rights of the parties under the Real Estate Tax Sale Law, he would perforce be confined to the provisions of that statute. But it is equally clear that a chancellor is free to provide traditional equitable remedies with respect to matters not covered by a statute. *See* 2 J. Pomeroy, *op. cit. supra,* §426a at 193. Here the statute treats of challenges to the regularity and legality of the actions of the Tax Claim Bureau (72 P.S. §5860.-607g), but those matters are not in dispute. What is in dispute, as mentioned at the outset, is the validity of the sale in light of the gross disparity between purchase price and value. With that matter the statute does not purport to deal in any way. I, thus, cannot agree that the Real Estate Tax Sale Law operates to oust equity of jurisdiction which traditionally has been within its cognizance. *See Capozzi v. Antonoplos,* 414 Pa. 565, 570, 201 A.2d 420 (1964); *Peoples-Pittsburgh Trust Co. v. Blickle,* 330 Pa. 398, 399-400, 199 A. 213 (1938), and cases cited; *Delaware County National Bank v. Miller,* 303 Pa. 1, 6, 154 A. 19 (1931); *Warren Pearl Works v. Rappaport,* 303 Pa. 235, 238, 154 A. 587 (1931).

The chancellor in his opinion held that "[e]quity certainly has the power to grant relief in the situation facing us here. In good conscience we could not stand by and see the plaintiff [appellee] suffer a substantial loss where no one is to be harmed by setting aside the tax sale and directing a new sale to be held." As the cases above cited make clear, the relief granted by the chancellor was an exercise of his discretion as such.

to limitations of actions and procedure for enforcement of decrees, *id.,* §426a at 193. *Bauer v. P. A. Cutri Co. of Bradford, Inc.,* 434 Pa. 305, 310, 253 A.2d 252 (1969), cited in the Court's opinion, is an example of the last type of case. *Scott v. Waynesburg Brewing Co.,* 256 Pa. 158, 100 A. 591 (1917), also cited in the majority opinion, is an example of the second category.

In *Delaware County National Bank v. Miller, supra,* we said: "It has often been said that this will not be done for a mere inadequacy of price, without more; but no case goes so far as to say that a chancellor must confirm a sale where the inadequacy is so great as to shock his conscience, as would be the case here. After all, the ultimate test always is, whether or not the action of the court in setting aside the sale was a gross abuse of discretion (Stroupe v. Raymond, 183 Pa. 279, 281; Chase v. Fisher, 239 Pa. 545, 548; Lefever v. Kline, 294 Pa. 22), and he would be a strange student of the law who could conclude that a chancellor grossly abused his discretion by refusing to do that which would have shocked his conscience." 303 Pa. at 6. The Court reiterated this holding in *Warren Pearl Works v. Rappaport, supra,* as exactly fitting the appeal in that case. In my view, it equally fits the present appeal.[3]

My brother EAGEN, while recognizing the inherent power of equity to set aside a judicial sale because of gross inadequacy of price, concludes that relief in equity is nevertheless unavailable here for the reason that the sale to appellant came about because of a mistake that was not mutual, but unilateral.

With respect, I think the emphasis on mutual mistake is misplaced and not supported by the cases cited in the concurring opinion.

It is true that, in the law of contracts, a unilateral mistake will generally not render a contract voidable, but the case at bar is not a contract case. Here the appellee failed to appear and bid at the sale because of misinformation received from an employee of the Tax Claim Bureau that the property was not listed for sale on the day in question. In *Rappaport, supra,*

---

[3] The relief here allowed by the lower court was, in my view, also in accord with the general principles set forth in the Restatement of Restitution, Chapter 6. *See especially* §123.

cited by Mr. Justice EAGEN, "[t]he mortgagees did not bid at the sale, because they were informed by counsel for the execution creditor [who was not the purchaser at the sale] that their mortgages would not be discharged". 303 Pa. at 237. In *First National Bank of Sunbury v. Rockefeller*, 333 Pa. 553, 5 A.2d 205 (1939), also cited in the concurring opinion, certain mortgages were erroneously satisfied "as the result of a mistake on the part of plaintiff with respect to the legal effect of the sale made by the executrix". 333 Pa. at 556. The Court held that "a refusal to permit the correction of the mistake so made would grievously penalize and cause undeserved injury to the plaintiff for its careless but innocent error, and at the same time would result in unjust enrichment of the defendants at plaintiff's expense". *Ibid.*[4] The mistake in *Rockefeller* was one of law, not of fact. While recognizing that "literal adherence to the rule that a court of equity will not relieve against a mistake of law" might prevent recovery, the Court felt that an exception was warranted where to grant the relief sought would merely place the parties in the positions held by them beforehand: "The injustice and hardship which will be suffered by plaintiff afford grounds for granting equitable relief, upon the fundamental principle that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law." 333 Pa. at 560. This was the rationale of the chancellor in the case at bar with respect to the innocent mistake of fact made by the appellee. The Court disserves the ancient purpose and function of equity and ignores the precedents which we ourselves have established when it holds that the chancellor erred.

Mr. Justice O'BRIEN joins in this dissenting opinion.

---

[4] Rockefeller was followed in *Norard Hosiery Mills, Inc. v. Orinoka Mills*, 416 Pa. 454, 206 A.2d 56 (1965).