548 A.2d 354

Personnel Department, City of Philadelphia and Kevin Tucker, Appellants *v.* Wendell Hilliard, Appellee.

*Richard C. McNeill, Jr.*, Assistant City Solicitor, for appellants.

*Carol Waties*, with her, *David Wayne Waties*, *Waties & Waties Law Offices*, for appellee.

OPINION BY SENIOR JUDGE NARICK, September 26, 1988:

Before us is an appeal by the Personnel Department, City of Philadelphia and Kevin Tucker[1] (Appellants) from a decision and order of Judge VICTOR J. DINUBILE of the Court of Common Pleas of Philadelphia which directed Appellants to permit Appellee Wendell Hilliard (Hilliard) to enter the police recruit class scheduled to commence on or about October 5, 1987. However, Judge DINUBILE's order also forbade Hilliard from maintaining outside employment and breach of this condition would result in Hilliard's dismissal from his employment as a police officer. We reverse.

This case originates from a complaint in equity and petition for injunctive relief filed by Hilliard after his dismissal from employment as a probationary police officer with the City of Philadelphia. Pursuant to Section

---

[1] Mr. Tucker is the former Police Commissioner for the City of Philadelphia.

7-401(J) of the Philadelphia Home Rule Charter[2] and Philadelphia Civil Service Regulation 14.01, Hilliard, as a civil service employee, was required to successfully complete a six-month probationary period before achieving permanent civil service employment status. During his period of probationary employment, Hilliard was required to participate in a 19-week training class at the Philadelphia Police Academy. All members of the class including Mr. Hilliard were informed during the first week of class that Police Department Directive 121 prohibits probationary police officers from maintaining outside employment. The members of the class including Hilliard were also provided with a police manual. This manual indicated that six demerits would be assessed against individuals maintaining outside employment during their period of probation and that the accumulation of six demerits would result in extra duty assignments.

During his period of probationary employment, Hilliard was also employed as a bus driver with Southeastern Pennsylvania Transportation Authority (SEPTA). On or about July 14, 1987, Hilliard's commanding officer, Lieutenant Michael Beck, received information that Hilliard was employed with SEPTA. When confronted by Lt. Beck, Hilliard admitted that he was employed by SEPTA. Lt. Beck advised Hilliard not to resign from his job with SEPTA until Lt. Beck "got back to him". Subsequently, Hilliard was terminated for maintaining outside employment in violation of Directive 121.

The trial court denied Hilliard's request for injunctive relief reasoning that Hilliard was an employee at will and that the police department had a valid right to terminate any probationary employee for maintaining

---

[2] Title 351 Pa. Code §7.7-401.

outside employment. However, the trial court further reasoned that certain equities did exist in favor of Hilliard, namely

(1) There was no evidence presented to indicate that Mr. Hilliard willfully failed to disclose or misrepresent the fact that he maintained outside employment. The Police Department learned of it shortly after his admission to the class. When confronted, he readily admitted to it.

(2) He [Hilliard] reasonably relied on Lt. Beck's assertion that he could maintain his Septa job after the interview on July 24, 1987.

(3) He [Hilliard] did not in any way, openly, beligerently [sic] and against the Department's wishes, persist in maintaining outside employment. After the Beck interview, Petitioner [Hilliard] received no advance notice nor warning of termination.

(4) There was some ambiguity about what sanction would be imposed by the Police Department. Although there is a general police directive granting the Department broad discretion in terminating a recruit for outside employment, the police manual merely provided for six demerits.

See trial court opinion, page 4.

The trial court concluded, based upon these equities, that Hilliard be permitted to enter a new police recruit class, noting that its ruling was beneficial, reasonable and not injurious to either of the parties. Appellants filed an appeal to the Commonwealth Court which operated as an automatic supersedeas of the trial court's order.[3] Hilliard thereafter petitioned the trial court to

---

[3] See Pa. R.A.P. 1736(b).

lift the supersedeas and his request was granted. Appellants then petitioned this Court for reinstatement of the supersedeas and the petition was granted. Hilliard thereafter filed a petition for reconsideration with this Court and a petition for stay of this Court's order with the Supreme Court. It was subsequently ordered by the Supreme Court pending final disposition on the merits in the Commonwealth Court that Hilliard be permitted to enter the police recruit class as indicated in the trial court's order.

The sole issue presented for our resolution in this appeal is whether the trial court erred in granting Hilliard's request for equitable relief by ordering his admission into a new police recruit class.

When reviewing a decision of a trial court in an equity proceeding, we are confined to a determination as to whether the findings are supported by substantial evidence, whether an error of law has been committed, or whether an abuse of discretion has occurred. *Northampton, Bucks County, Municipal Authority v. Bucks County Water and Sewer Authority*, 96 Pa. Commonwealth Ct. 514, 508 A.2d 605 (1986).

It is well established that a probationary status civil service employee does not enjoy the job security afforded to regular status employees who may be removed only for just cause. *See Norristown State Hospital v. Bruce*, 69 Pa. Commonwealth Ct. 298, 450 A.2d 1093 (1982); *Department of Health v. Graham*, 58 Pa. Commonwealth Ct. 409, 427 A.2d 1279 (1981); *Cunningham v. State Civil Service Commission*, 17 Pa. Commonwealth Ct. 375, 332 A.2d 839 (1975).[4] A probationary status civil service employee, unlike a regular status civil service employee, does not possess a substantial personal or property right in continued employment.

---

[4] *Also see Hunter v. Jones*, 417 Pa. 372, 207 A.2d 784 (1965).

*See Sweeting v. Pennsylvania State Police,* 95 Pa. Commonwealth Ct. 45, 503 A.2d 1126 (1986).[5] Under the State Civil Service Act, a probationary employee may seek administrative or judicial review of his dismissal only where he alleges that his dismissal was based upon discrimination due to political or religious opinions or affiliations, or because of labor union affiliations, or race, national origin or other non-merit factors. *See* Section 905.1 of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended,* added by Section 25 of the Act of August 27, 1963, P.L. 1257, 71 P.S. §741.905a.

The burden of proving that a probationary employee's dismissal is based upon discriminatory reasons is on the employee. *Norristown, Graham, Cunningham, Hunter.* It is not sufficient for a probationary employee to attempt to satisfy this burden of proof by alleging there were not enough merit factors assessed against him because this Court has held that there is no quantitative standard for the removal of a probationary employee and that as long as the removal is job-related and not tainted by discriminatory motives a dismissal of a probationary employee will not be disturbed. *Norristown, Graham.*

In the matter herein, the trial court made no findings as to whether Hilliard's dismissal was tainted with discriminatory motives. Hilliard asserts in his brief that the Appellant police department had a history of discriminating against black police officers, thereby suggesting that his dismissal was based upon discriminatory motives. However, after examining the entire record, we have been unable to discover any evidence which would indicate that Hilliard was treated any dif-

---

[5] Under Sections 504 and 101 of the Administrative Agency Law, due process in the form of notice and an opportunity to be heard is required only when a final order affects a substantial personal or property right or other similar interests.

ferently than other employees. In fact, the record reveals that the parties stipulated Hilliard was dismissed for violation of Directive 121 which forbids probationary employees from maintaining outside employment.[6]

Hence, once the trial court concluded that Hilliard's dismissal was not for discriminatory reasons, it lacked authority to explore the reasonableness of Appellant's decision to remove Hilliard. A court sitting in equity must follow the law. *First Federal Savings and Loan Association v. Swift*, 457 Pa. 206, 321 A.2d 895 (1974). Hilliard did not present evidence that his dismissal was based upon discriminatory motives. Therefore, Hilliard failed to sustain his burden of proof before the trial court and it was an abuse of discretion for the trial court to order Hilliard's re-admission to the Police Academy.

Accordingly, we must reverse the decision and order of the Court of Common Pleas of Philadelphia.

### ORDER

AND NOW, this 26th day of September, 1988, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed.

---

[6] We are aware that there is some discrepancy in the record as to the punishment to be imposed for a probationary employee's maintaining outside employment. However, because the record is devoid of any evidence that Hilliard was treated any differently than other employees, we cannot hold that this dismissal was improper.

---

### CONCURRING OPINION BY JUDGE DOYLE:

I concur in the result reached by the majority because the Appointing Authority here was within its province to dismiss Hilliard, a probationary employee who had not yet attained a property right in his position, provided, that the dismissal was not implemented

for unlawful, i.e., discriminatory, reasons. I do not, however, believe that the common pleas court had jurisdiction to decide the discrimination question in the context of an equity proceeding where administrative remedies before the Human Relations Commission are available to determine the issue of the alleged discrimination under the provisions of the Pennsylvania Human Relations Act.[1] *See e.g., Murphy v. Township of Lower Merion,* 73 Pa. Commonwealth Ct. 376, 457 A.2d 1342 (1983) (a court will only exercise its equitable powers where statutory remedy has been exhausted).

[1] Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§951-1003.