**[J-46-2025] [MO:Todd, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| IN RE: UPSET SALE, TAX CLAIM BUREAU OF TIOGA COUNTY, CONTROL NO. 012488 | : | No. 51 MAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1285 |
| MARTIN J. OSTAPOWICZ, | : | CD 2022, entered on November 6, |
| | : | 2023, Affirming the Order of the |
| Appellant | : | Tioga County Court of Common |
| | : | Pleas, Civil Division, at No. 606 CV |
| v. | : | 2021, entered on October 12, 2022 |
| | : | |
| TIOGA COUNTY TAX CLAIM BUREAU, | : | ARGUED: May 30, 2025 |
| | : | |
| Appellee | : | |

## CONCURRING AND DISSENTING OPINION

**JUSTICE DOUGHERTY**                                    **DECIDED: January 21, 2026**

I join the majority's determination the Bureau complied with the Real Estate Tax Sale Law's ("RETSL")[1] notice requirements. I respectfully dissent, however, from the majority's holding that the RETSL does not allow property owners to raise most equitable challenges to the sale, namely that a sale price is grossly inadequate. Because I believe such claims are cognizable under the RETSL, I would remand the case to allow the trial court to consider whether the sale price was grossly inadequate.

The provisions pertaining to challenges to, and confirmations of, upset tax sales can be found in Section 607 of the RETSL. *See* 72 P.S. §5860.607. After an upset sale, Section 607 first requires the county tax bureau to make a consolidated return to the court of common pleas, setting forth the details of the sale, and "if it shall appear to said court

---

[1] 72 P.S. §5860.101-5860.803.

that such sale has been regularly conducted under the provisions of this act, the consolidated return and the sales so made shall be confirmed nisi." *Id.* at §5860.607(a). The bureau must also provide notice to each owner "that the property was sold and that the owner may file objections or exceptions with the court relating to the regularity and procedures followed during the sale no later than thirty (30) days after the court has made a confirmation nisi of the consolidated return." *Id.* at §5860.607(a.1)(1). After the confirmation nisi, the bureau must publish notice of the return to court and confirmation nisi, stating that owners or lien creditors can file objections or exceptions, or else the consolidated return will be confirmed absolutely. *See id.* at §5860.607(b).

Most relevant here, Section 607(d) provides:

> Any objections or exceptions to such a sale may **question the regularity or legality of the proceedings of the bureau in respect to such sale**, but may not raise the legality of the taxes on which the sale was held, of the return by the tax collector to the bureau or of the claim entered. In case any objections or exceptions are filed they shall be disposed of according to the practice of the court. If the same are overruled or set aside, a decree of absolute confirmation shall be entered by the court.

*Id.* at §5860.607(d) (emphasis added). If the court sustains the objections or exceptions and "deems the defect not amendable," it shall invalidate the sale and order another sale. *Id.* at §5860.607(e). But "[i]f no objections or exceptions are filed or **if objections or exceptions are finally overruled and the sale confirmed absolutely**, the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, **shall not thereafter be inquired into judicially in equity or by civil proceedings** by the person in whose name such property was sold, by a grantee or assignee, by any lien creditor or by any other person, except with respect to the giving of notice under the act, to the time of holding the sale, or to the time of petitioning the court for an order of sale." *Id.* at §5860.607(g) (emphasis added). In sum, Section 607 establishes a timeline of events after an upset

sale occurs: the bureau makes a consolidated return to the court, the court makes a preliminary confirmation nisi, and interested parties can file objections or exceptions. If those objections or exceptions are sustained, the court invalidates the sale. If the objections or exceptions are overruled, the court confirms the sale absolutely.

Working backwards through Section 607's provisions, I first note my disagreement with the majority's determination that "[b]y its plain language, Subsection 5860.607(g) does not permit a challenge to an allegedly inadequate sale price." Majority Opinion at 22.[2] In my view, Section 607(g) expressly suggests the opposite — that owners **can** raise equitable challenges (such as a grossly inadequate price challenge) in their objections and exceptions. Critically, the language emphasized by the majority pertains only **after** "objections or exceptions are finally overruled and the sale [is] confirmed absolutely[.]" 72 P.S. §5860.607(g). This specification that "the proceedings of the bureau with respect to such sale[ ] shall not **thereafter** be inquired into judicially in equity or by civil proceedings" (save a few specific claims) suggests that prior to absolute confirmation — *i.e.*, in objections or exceptions — owners **can** raise other equitable challenges to the bureau's proceedings with respect to the sale. *Id*. (emphasis added). Otherwise, the word "thereafter" would be surplusage. *See Commonwealth v. McClelland*, 233 A.3d 717, 734 (Pa. 2020) ("Some meaning must be ascribed to every word in a statute . . . , and there is a presumption that disfavors interpreting language as mere surplusage."), *citing* 1 Pa.C.S. §1922(2). At the very least, Section 607(g) does not curtail the content of

---

[2] *See also* Majority Opinion at 24 ("Section 5860.607(g) provides that, after confirmation of an upset tax sale, an owner may raise a challenge 'judicially in equity or by civil proceedings' **only** to the giving of notice, to the time of holding the sale, or to the time of petitioning the court for an order of sale. 72 P.S. §5860.607(g). In this manner, the RETSL expressly limits the specific claims a landowner may raise, including in equity, and an alleged inadequacy of sale price is not one of the permissible claims.") (emphasis in original).

objections or exceptions, which are filed after the confirmation nisi but before absolute confirmation.

But what of Section 607(d)? Certainly, the majority is correct that subsection puts limits on objections or exceptions: they "may question the regularity or legality of the proceedings of the bureau in respect to such sale, but may not raise the legality of the taxes on which the sale was held, of the return by the tax collector to the bureau or of the claim entered." 72 P.S. §5860.607(d). Yet I respectfully disagree with the majority's interpretation of those limits. I do not take issue with the majority's definitions of "regularity" and "legality." *See* Majority Opinion at 20 (defining "regularity" as "something that happens in the usual way[,]" and "legality" as "attachment to or observance of law" or "the quality or state of being legal"). But I would emphasize that, to give effect to the disjunctive "or" and avoid surplusage, "regularity" and "legality" must mean different things. *See Coleman v. Parkland Sch. Dist.*, 346 A.3d 1266, 1277 (Pa. 2025) (where nothing in a statute "suggests the rare conjunctive meaning of 'or' was intended by the legislature[,] . . . commensurate with [1 Pa.C.S. §]1903(a), we must assume the General Assembly intended the far more common disjunctive meaning for the term"); *id.* at 1285 (Todd, C.J., dissenting) ("the term 'or' is accepted as a disjunctive setting forth choices or alternatives"). The "regularity . . . of the proceedings of the bureau in respect to [an upset] sale" cannot solely refer to whether or not the bureau followed the procedures required by RETSL (or the federal and state constitutions). 72 P.S. §5860.607(d). Otherwise, "regularity" in this context would be synonymous with "legality." "This is contrary to the basic rule of construction that when a rule or statute uses different words, it is presumed the words have different meanings." *Shirley v. Pa. Legislative Reference Bureau*, 318

A.3d 832, 849 (Pa. 2024). Instead, "regularity" must cover more, and in my view, by contrast to "legality," it could easily implicate principles of equity.[3]

Additionally, I disagree with the majority's requirement for "an identifiable defect in the proceedings **which leads to** an inadequate bid at an upset tax sale" before an owner can challenge a grossly inadequate price. Majority Opinion at 20 (emphasis in original). Section 607(d) does not refer to "proceedings which lead[ ] to" a sale; instead, it speaks of the regularity or legality of "the proceedings of the bureau in respect to such sale[.]" 72 P.S. §5860.607(d). The majority seems to equate regular "proceedings" to "a tax bureau's usual **procedure**[,]" Majority Opinion at 20 (emphasis added), but in my view, "proceedings" in this context more naturally refers to the bureau's conduct or actions in conducting the sale, *i.e.*, the way the bureau "proceeded" with the sale. *See Proceeding*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/proceeding ("proceedings plural : events, happenings") (capitalization omitted).

Moreover, it is unclear why the majority believes the "proceedings of the bureau **in respect to** [an upset] sale" refers only to the proceedings leading up to the sale, and does not include aspects of the final sale itself, such as the bureau's sale of the property for a particular price. Consider Section 605 of the RETSL, which defines the upset sale price and provides "[n]o sale of property shall be made by the bureau unless a bid equal to the upset price is made." 72 P.S. §5860.605. Undoubtedly, if a bureau sold a property for less than its upset price, the owner would be able to object to the "legality of the

---

[3] This is supported even further by the text of Section 607(e), which provides: "If such objections or exceptions are sustained and the court deems the defect not amendable, it shall, by its **order or decree**, invalidate the sale and order another sale to be held in conformity with this act at such time and under such conditions as it shall fix." 72 P.S. §5860.607(e) (emphasis added). The first definition Black's Law Dictionary provides for the word "decree" is: "Traditionally, a judicial decision in a court of **equity**, admiralty, divorce, or probate — similar to a judgment of a court of law." *Decree*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added).

proceedings of the bureau in respect to such sale," because the bureau's acceptance of such price would be illegal pursuant to Section 605. But consider also if a bureau sells the property for a price that technically surpasses the upset sale price, but is otherwise so low that it shocks the conscience and is an extreme outlier compared to prices accepted by the bureau in other cases. If the bureau sells the property for such an **irregularly low** price, why wouldn't that implicate the "regularity" of the proceedings?[4]

---

[4] I acknowledge there is a presumption in our law that "the price received at a duly-advertised public sale is the highest and best obtainable." *First Fed. Sav. & Loan Ass'n of Lancaster v. Swift*, 321 A.2d 895, 897 n.4 (Pa. 1974). Although that presumption might carry the day in the vast majority of cases, presumptions are generally rebuttable. I also observe our case law has long distinguished between a mere inadequacy of price and a **gross** inadequacy of price, at least in the sheriff's sale context. *Compare Plummer v. Wilson*, 185 A. 311, 314 (Pa. 1936) ("It has been repeatedly ruled by this [C]ourt that inadequacy of price is not alone sufficient to invalidate a public sale under process of law."), *with Peoples-Pittsburgh Trust Co. v. Blickle*, 199 A. 213, 214 (Pa. 1938) ("In this commonwealth, the principle is established that gross inadequacy of price, on timely application by the mortgagor, furnishes sound basis for setting aside a sheriff's sale."). *See also Capozzi v. Antonoplos*, 201 A.2d 420, 422 (Pa. 1964) ("gross inadequacy of price is sufficient basis, **in itself**, for setting aside a sheriff's sale") (emphasis added); *Del. Cty. Nat'l Bank v. Miller*, 154 A. 19, 21 (Pa. 1931) ("It has often been said that [courts] will not [set aside a sale] for a mere inadequacy of price, without more; but no case goes so far as to say that a chancellor must confirm a sale where the inadequacy is so great as to shock his conscience"); *City of Philadelphia v. Hart*, 224 A.3d 815, 822 (Pa. Cmwlth. 2020) (Brobson, J.) ("Where a tax sale is challenged based upon the adequacy of the price, our courts have frequently held that mere inadequacy of price, standing alone, is not a sufficient basis for setting aside a sheriff's sale. . . . Where a gross inadequacy exists, however, courts have found proper grounds to set aside a sheriff's sale, and each case is determined on its own facts."); *Bank of Am., N.A. v. Estate of Hood*, 47 A.3d 1208, 1211 (Pa. Super. 2012) (Donohue, J.) ("Where a sale is challenged based upon the adequacy of the price our courts have frequently said that mere inadequacy of price standing alone is not a sufficient basis for setting aside a sheriff's sale. However where a 'gross inadequacy' in the price is established courts have found proper grounds exist to set aside a sheriff's sale.") (citation omitted); *Cf. Wagener v. Yetter*, 124 A. 487, 488 (Pa. 1924) ("We are not unmindful of the rule that mere inadequacy of price without more is not enough for setting aside a sheriff's sale[,] yet, where, as here, the inadequacy is so great as to shock the conscience of a chancellor, this court will seize upon even slight circumstances in order to give relief") (citation omitted). Under this case law, the majority's proposition — that "[a]bsent an identifiable defect in the proceedings which leads to an inadequate bid at an upset tax sale, the sale price of a property is determined by the amount the highest bidder is willing to pay for the property" — is correct in **most**
(continued…)

In *First Federal Savings and Loan Association of Lancaster v. Swift*, a plurality of this Court explained that "[w]hen the rights of a party are clearly established by defined principles of law, equity should not change or unsettle those rights. Equity follows the law." 321 A.2d 895, 897 (Pa. 1974). I agree completely. But for the reasons outlined above, I disagree with the *Swift* plurality's determination the RETSL "is the sole authority governing" such a sale for delinquent taxes, leaving no room for otherwise-available equitable relief. *Id.* On this point, I am in alignment with Justice Eagen's concurrence and Justice Pomeroy's dissent. *See id.* at 899 (Eagen, J. concurring) ("It is my strong belief that the legislature did not attempt to completely fill this area of the law so as to eliminate all remnants of the common law from being applied. . . . [I]t is my belief that the 'gross inadequacy' test has not been eliminated from consideration in delinquent tax sales by [the RETSL]."); *id.* at 900 (Pomeroy, J. dissenting) ("I . . . cannot agree that [the RETSL] operates to oust equity of jurisdiction which traditionally has been within its cognizance."). In exceptional cases where an upset sale has resulted in a grossly inadequate price, I do not believe the RETSL has abrogated this long-recognized equitable relief.

To be clear, I am extremely skeptical appellant could establish that the sale price here was grossly inadequate (or that he would be eligible for equitable relief at all[5]). But

---

cases. Majority Opinion at 20 (emphasis omitted). But in my view, in those rare cases where the price obtained is **grossly** inadequate — where it is so outrageously low that it "shock[s the] conscience," *Miller*, 154 A. at 21 — that fact alone can rebut the usual presumption, with the caveat that each case is to be decided on its own facts. *See Capozzi*, 201 A.2d at 422; *see also Miller*, 154 A. at 21 ("he would be a strange student of the law who could conclude that a chancellor grossly abused his discretion by refusing to do that which would have shocked his conscience").

[5] "[H]e who comes into a court of equity must come with clean hands. . . . [T]he clean hands doctrine does not bar relief to a party merely because his conduct in general has been shown not to be blameless; the doctrine only applies where the wrongdoing directly affects the relationship subsisting between the parties and is directly connected with the matter in controversy." *In re Estate of Pedrick*, 482 A.2d 215, 222-23 (Pa. 1984) (internal quotation and citations omitted).

because the trial court rejected this claim out of hand, I would remand to that court so it could consider the issue in the first instance.  Thus, for all of the foregoing reasons, I respectfully dissent from the majority's holding that "[a]bsent an irregularity or illegality in the sale proceedings that is tied to the allegedly inadequate sale price of a property, the RETSL does not permit a landowner to seek equitable relief based on the sale price, regardless of the ratio of the sale price to a property's fair market value."  Majority Opinion at 25.  I otherwise join the majority's determination the Tioga County Tax Claim Bureau complied with the RETSL's notice requirements.