OTTO BURKHARDT ET UX V. GEORGE LIEBERMAN ET AL.

No. 7784. Decided February 4, 1942.
Rehearing overruled March 11, 1942.
(159 S. W.; 2d Series, 847.)

410

*H. Fletcher Brown* and *Walter F. Brown, both* of Houston, for plaintiff in error.

An affidavit made by plaintiff's wife some three years before the deed of trust was executed did not estop either of plaintiffs from asserting that the property involved was a part of their homestead and that the deed of trust was void. Therefore the judgment that they take nothing was erroneous. Thomas v. Creager, 107 S. W. (2d) 705; McLaren v. Jones, 89 Texas 131, 33 S. W. 849; Harrop v. National Loan & Inv. Co., 204 S. W. 878.

*W. E. Daly* and *Chas. L. Terry, both* of Houston, for defendants in error.

Plaintiffs having resided on other lands for a long period of time and having made homestead disclaimers and defendants having relied on such disclaimers, and alleging that they would not have bought the land except for their belief and reliance thereon, that plaintiffs and each of them are estopped to claim any homestead rights in the land as against defendants. Alexander v. Wilson, 124 Texas 392, 77 S. W. (2d) 874; Hughes v. Wruble, 131 Texas 444, 116 S. W. (2d) 368; Guaranty Bond State Bank of Mt. Pleasant v. Kelley, 13 S. W. (2d) 69.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is an action in trespass to try title brought by petitioners Otto Burkhardt and wife, Mary Burkhardt, against the respondents, George Lieberman and O. C. Riedel, for title and possession of 71.6 acres of land situated in Harris County, Texas, and a lot in the City of Houston. The 71.6 acres consisted of six tracts, three of 25, 16 and .6 acres, respectively, and three of 10 acres each, all contiguous except that a small tract of 16 acres belonging to a daughter of the Burkhardts lay between the three 10-acre tracts and the other three.

Lieberman pleaded a general denial and "not guilty." He specially pleaded (1) that he was an innocent purchaser for value; (2) estoppel of the Burkhardts to assert that the same was their homestead; (3) improvements in good faith of the value of $250.00; (4) and as to 25 acres of the land he sought rescission of sale as holder of a vendor's lien note. By way of cross action he prayed for judgment for taxes levied against the land and paid by him with foreclosure of the lien to which he claimed he thus became subrogated.

Riedel answered by general denial and plea of "not guilty," disclaimed as to 41.6 acres and specially pleaded as to the other 30 acres that he was an innocent purchaser for value.

Trial was to a jury and upon their answers to special issues judgment was rendered that the Burkhardts take nothing as against Lieberman and Riedel and that Lieberman be quieted in his title to the 25 acres as to which he asserted superior title as holder of a vendor's lien note. Upon appeal by the Burkhardts to the Court of Civil Appeals, at Galveston, the judgment of the trial court was affirmed. 142 S. W. (2d) 283.

The Burkhardts assign numerous errors in the judgment of the Court of Civil Appeals but, as we view the case, only a few of them need be considered. They concede that the judgment of the trial court in favor of Lieberman as to the city lot in Houston was correct.

On January 28, 1932, Burkhardt executed to W. S. Cochran as trustee for the First National Bank of Houston, a deed of trust covering the lands above described to secure said bank in the payment by Burkhardt of one note in the sum of $1,300.00 of date October 30, 1931, due January 28, 1932, and another in the principal sum of $1,500.00 of date December 21, 1931, due March 20, 1932, and to secure all renewals and extensions of said notes and any other debts then or thereafter owing by Burkhardt to said bank. These notes were in renewal of an indebtedness already due by Burkhardt to said bank. On September 24, 1935, Burkhardt executed to W. S. Cochran, as trustee for said bank, another deed of trust on said lands to secure two notes of even date, one for $2,152.49, and the other for $1,055.52, both payable to the order of the bank on January 2, 1936, and any future indebtedness Burkhardt might owe the bank. The second deed of trust was in renewal of the first. Both contained a recitation that the lands covered thereby were no part of Burkhardt's business or residence homestead and were not in any way then occupied, used or enjoyed as such. Mary Burkhardt did not join in the execution of either of these instruments. On April 6, 1937, W. S. Cochran, trustee, reciting default by Burkhardt in payment of said indebtedness, request by the bank, notice, etc., executed to Lieberman a deed conveying said lands to him for a consideration of $3,360 same being the "best and highest" bid. On February 15, 1938, Lieberman by general warranty deed conveyed 30 acres of said lands, in three 10-acre tracts each, to Riedel reciting ten dollars and other valuable considerations paid. Lieberman testified that Riedel paid him $4,200.00 "some-odd dollars" for this deed. Riedel said he paid $4,250.00 each.

The Burkhardts claimed that the deeds of trust above described and the trustee's deed to Lieberman and Lieberman's deed to Riedel were void on the ground that on January 28, 1932, on September 24, 1935, on April 6, 1937, and thereafter until Burkhardt was ejected by Lieberman, the 71.6 acres of land described was their homestead. Lieberman and Riedel countered with an assertion of estoppel against the Burkhardts to assert any homestead rights, and as a part of their evidence

on that issue they introduced an affidavit purportedly executed by the Burkhardts on March 25, 1932, stating that 71 acres of the land in controversy was not then being used as a business or residence homestead and that they had no intention so to use it. Other evidence relating to this issue will be recounted by us later.

In response to special issues 1 to 4, inclusive, the jury found that the 71.6 acres of land described in plaintiffs' petition was a part of the homestead of the Burkhardts on January 28, 1932 (the date of the first deed of trust above described), and September 24, 1935 (the date of the second deed of trust above described and the one under which the trustee's sale was made to Lieberman). The testimony conclusively supports these findings. In fact, that the land was so used by the Burkhardts does not seem to have been controverted seriously by either Lieberman or Riedel and seems to have been assumed by the Court of Civil Appeals in its opinion.

Under the language of the Constitution itself the two deeds of trust, being on a homestead and not for one of the three excepted purposes, were utter nullities. Art. 16, Sec. 50, Texas Constitution; Toler et al v. Fertitta (Com. App.), 67 S. W. (2d) 229. This much seems to have been recognized by Lieberman and Riedel since they seek to avoid its effect by the claim that the Burkhardts are estopped to assert their homestead interest, and such appears to have been the view of the trial court in disregarding the jury's findings and it is the basis of the judgment of the Court of Civil Appeals.

■ Are the Burkhardts estopped? In determining this question we are bound by the well established rule that acts or omissions alleged to constitute estoppel must be those of both the husband and the wife. That is, Burkhardt might be held so to have acted or failed to act under circumstances which the law regards as sufficient to estop him to claim the property as homestead, yet unless equivalent conduct or omission is proved as to Mary Burkhardt she cannot be held to be estopped. And if she is not estopped, Burkhardt is not. As recently as November 12, 1941, the Supreme Court approved and applied this principle in Lincoln et ux v. Bennett, (this volume, page 56), 156 S. W. (2d) 504, opinion by Justice Sharp. See, also, Miller v. Southland Life Ins. Co. (Civ. App.), 68 S. W. (2d) 558; Kallman v. Ludenecker et al 9 Civ. App. 182, 28 S. W. 579; Barclay

v. Dismuke et al (Civ. App.), 202 S. W. 364; Andrews v. Security National Bank, 121 Texas 409, 50 S. W. (2d) 253, 83 A. L. R. 44.

We have carefully studied the statement of facts in this case and we find not a single fact or circumstance that can fairly be considered as proof of any element of estoppel against Mary Burkhardt except the alleged homestead affidavit claimed to have been executed by her as part of the transaction terminating in the execution of the first deed of trust by Otto Burkhardt on January 28, 1932. That instrument is appended as an exhibit to the Court of Civil Appeals opinion appearing at page 291, of 142 S. W. (2d) supra. We think it discloses nothing from which it can reasonably be deduced that Mary Burkhardt had ever heard of any deed of trust that her husband had executed to the First National Bank of Houston. In the first place, the instrument seems one originally to have been prepared for execution by Mary Burkhardt alone. This is demonstrated by continued use of the singular *I, me* and *my* after the plural first person pronouns had been stricken. Again, while the instrument is signed by both Mary and Otto Burkhardt and certified by the notary on *March 25, 1932*, the last notarial certificate is to the effect that same was "subscribed * * * by Otto Burkhart" on *August 5; 1933*. Again, Mary Burkhardt is made to say that the affidavit is made with full knowledge that " the First National Bank of Houston, Houston, Texas, *will advance* certain sums to *me*" (italics ours), whereas the truth was that sums had already been advanced to Otto Burkhardt *prior* to January 28, 1932—nearly two months before she ever saw the "affidavit."

This instrument is not referred to with any intention to suggest that it alone would constitute an estoppel even if signed by both the Burkhardts on January 28, 1932, because all the decisions are to the contrary. See Lincoln et ux v. Bennett, supra, and the authorities there cited; Nixon v. Hirschi (134 Texas 415, 136 S. W. (2d) 583). We refer to it because, as already stated, it is the only evidence in the record that might be considered as indicating that Mary Burkhardt had any knowledge whatever of the deeds of trust or any of the subsequent transactions had thereunder, and we believe, considering its date, its form and contents, and the other facts surrounding its execution, that it presents as cogent evidence that she had no such knowledge as that she did. This view is further supported by the fact that there is uncontradicted testimony

in the record that Mary Burkhardt did not understand English very well.

Since the deeds of trust were void it follows that the subsequent sale thereunder by the trustee to Lieberman and Lieberman's later conveyance of 30 acres to Riedel were void. If such were not so, the unequivocal provisions of the Constitution could be circumvented by a deed of trust executed by the husband alone (on any consideration whatever) and a sale thereunder to an alleged innocent purchaser for value without the wife ever knowing about the deed of trust, much less that any sale thereunder was ever contemplated. Lieberman's claim that before buying at the trustee's sale he inquired of Burkhardt whether the property was homestead and that the latter said it was not, does not alter the rule, in face of the fact that the same was then actually being used for homestead purposes and Lieberman made no inquiry whatever of Mary Burkhardt. In fact, he testified he did not know her even at the time of the the trial. If he made no inquiry of her, if she did not know that he intended to buy the land or that it was ever up for sale to anybody, how can Lieberman be heard to urge that he was misled by her silence? If a married woman is not estopped by passive negligence when she has partial notice of the facts (as in McLaren v. Jones, 89 Texas 131, 33 S. W. 849), how could Mary Burkhardt be estopped by failure to act when she knew nothing of the facts?

For the same reason the argument that she is estopped because she did not enjoin the deed of trust sale and thereby save Lieberman and Riedel from harm is wholly fallacious.

A much stronger case against homestead claimants seeking to cancel a renewal deed of trust in the hands of an innocent purchaser appears in Lincoln v. Bennett, supra, than is presented here against the Burkhardts. In that case the wife joined in the original deed of trust and Bennett, who, without notice of the homestead claim, advanced the money to renew and extend it and took a renewal deed of trust, was held not to have an enforceable lien in the face of actual homestead occupancy by the Lincolns, since it "is not shown that she (Mrs. Lincoln) knew about the statement made by Lincoln to Bennett, or to his attorney, to induce Bennett to acquire the Schoellkoff note, or that she ever ratified such statement. There is nothing in the record, except the homestead designation, executed five years prior to that time, that would in any way affect her rights in

the homestead." No reason is apparent why the principle thus applied to a subsequent innocent vendee of a void lien would not apply with equal force to a subsequent innocent vendee in a sale of the land under a void lien and to his immediate vendee, the lands being actually occupied by the Burkhardts for homestead purposes.

Nor is this case any different because of the fact that the homestead is claimed on six different contiguous or neighboring tracts with the Burkhardts' residence located on a rented tract a mile or more distant. Rutland Savings Bank v. Isbell et al (Com. App.), 154 S. W. (2d) 442; Higgins v. Millsap (Civ. App.), 121 S. W. (2d) 469.

But Lieberman contends that Burkhardt, after the lands had been sold to him under the deed of trust, surrendered the property. This contention is without merit because, beginning as early as 1857 in an opinion by Chief Justice Hemphill in Gouhenant v. Cockrell, 20 Texas 96, our courts have held that "it must be undeniably clear and beyond almost the shadow, at least (of) all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption." Burkhardt testified that after the trustee's sale to Lieberman he surrendered the property because he "had to." While we do not mean to hold that the husband cannot, under proper circumstances, abandon the homestead, we do hold that he cannot do so as part of a plan of action, deliberate or innocent on his part, that begins with a void deed of trust, executed by him alone for a purpose frowned upon by the Constitution, and ends in a sale to which the wife is not a party and about which she knows nothing, especially where the husband surrenders the property reluctantly and in ignorance of his rights. Otherwise, the constitutional provision guaranteeing the family homestead would amount to no more than mere verbiage.

We hold, therefore, that the Burkhardts were not estopped to claim the 71.6 acres of land described in their petition as their homestead and that, therefore, the two deeds of trust and the deed thereunder to Lieberman and Lieberman's deed to Riedel were void.

Lieberman alleged that Burkhardt purchased the 25-acre tract in controversy from one Holm on July 15, 1924; that Burkhardt, as part of the consideration, executed a vendor's

lien note in the principal sum of $1,300.00, due in one year with interest at 8 per cent. per annum, the superior title being retained in the deed from Holm to secure its payment; that said note and lien were last renewed and extended by instrument of date December 31, 1931, executed by Burkhardt in favor of Holm providing for maturity on or before January 1, 1937; that said note was outstanding when he, Lieberman, purchased said 25 acres at the trustee's sale on April 6, 1937, and was secured by the first and superior lien on the 25 acres; that on May 18, 1937, said note and lien and superior title were transferred to him, Lieberman, by Holm for the sum of $1,300.00; that Burkhardt and wife had not paid or offered to pay said note or any part thereof; wherefore, Lieberman alleged, he had elected to rescind and cancel the executory sale of said 25 acres by Holm to Burkhardt, etc. .

■ In reply to that pleading, the Burkhardts alleged that "they are ready and willing to pay to the defendant, George Lieberman, the amount that he paid to take up the note to E. L. Holm and wife, mentioned in the first amended original answer of the defendant Lieberman, and they tender into court whatever amount the court determines to be necessary to reimburse the said Lieberman for the amount so paid out on said note, *and they offer to do whatever equity the court requires of them in connection with this suit.*" (Italics ours).

This note, although originally due in one year, had been renewed from time to time so that the indebtedness it evidenced was about 13 years old when Lieberman bought it and was almost 15 years old when he filed his pleading seeking rescission of sale as holder of the superior title to the 25 acres against which the lien securing it existed. Lieberman alleged that he paid $1,300.00 for the note, so it would appear that Burkhardt had kept the interest paid up thereby winning the indulgence that he had enjoyed at the hands of Holm as to payment of the principal. Although he had theretofore bought the 25 acres, as a tract included in the 71.6 acres conveyed in the trustee's sale on April 6, 1937, when he paid Holm the $1,300.00 due on said note on May 18, 1937, Lieberman took a transfer of the note and lien rather than a release. According to Riedel, he paid Lieberman $4,250.00 for 30 acres of this same 71.6 acres on February 15, 1938. Therefore, it would seem that the 25 acres was worth much more than the $1,300.00 and interest due on the note. The record discloses no demand made by Lieberman after he bought the note and lien and before he

filed his cross action for rescission that Burkhardt pay either the interest or the principal due on the note. Moreover, Lieberman was asserting title to the land under the trustee's deed so the Burkhardts would naturally be expected to await the determination of the homestead issue, or at least would want to litigate both matters together before liquidating the $1,300.00 note.

With the Burkhardts alleging a tender of whatever amount the court should determine necessary to reimburse Lieberman and offering "to do whatever equity the court requires of them in connection with this suit," we believe they made such an offer to do equity as that their pleading amounted to a tender. Rescission, as sought in this case, is regarded as a harsh remedy and is not favored. Therefore, relative equities will be weighed and unless they clearly favor the party seeking rescission the same will be denied and the holder put to his remedy of foreclosure. We believe the equities here are with the Burkhardts. Consequently, that phase of the case is reversed and remanded to the trial court with instructions to determine the amount of principal and interest due on this note and to give the Burkhardts reasonable opportunity to perform on their tender. If they then fail so to perform that court will enter judgment quieting the title in Lieberman as to the 25 acres as prayed by him. See Young et ux v. Fitts et al 138 Texas 136, 157 S. W. (2d) 873 (decided January 7, 1942), and the authorities therein cited.

Lieberman pleaded that after he bought the land at trustee's sale he found that State, county and school district taxes duly levied and assessed against it for the years 1931 to 1936, both inclusive, had been suffered by the Burkhardts to become delinquent; that on April 28, 1937, he paid the same and all penalties and interest that had accrued thereon, to the amount of $862.00; that, as owner of the land he rendered the same for State, county and school taxes for 1937 and paid such taxes to the amount of $87.25; that these taxes were not paid by him as a volunteer because he was in possession of the land claiming it under a deed, for a valuable consideration, and therefore he not only had the right but was obligated to pay them; that he is entitled to recover them of the Burkhardts with interest at 6 per cent. per annum from date of payment; that by reason of the premises he is subrogated to the tax liens of the State, county and school district and entitled to a foreclosure thereof.

One who pays taxes due on property of another, without any request by the debtor or any contractual right so to do or any joint liability therefor, is a volunteer and is not entitled to reimbursement. So it has been held that one holding a mortgage can recover taxes paid to protect his lien provided he includes the same in the amount for which he forecloses, otherwise he has no right to reimbursement. Stone et al v. Tilley et al, 100 Texas 487, 101 S. W. 201, 10 L. R. A. N. S. 678, 123 Am. St. Rep. 819, 15 Ann. Cas. 524. One who takes a deed to the homestead knowing it is only a mortgage and pays taxes due thereon has no lien. Toler et al v. Fertitta, supra. Likewise, one holding the land under a void tax deed is not subrogated to the lien nor is he entitled to a personal judgment for taxes paid by him, because he is a mere trespasser. Mumme v. McCloskey, 28 Texas Civ. App. 83, 66 S. W. 853 (er. ref.). One buying at a tax sale under foreclosure where the record owner is not made a party is not entitled to reimbursement because, having constructive notice that the title is in another, he is not considered as acting in good faith. American Realty Corporation v. Tinkler (Civ. App.), 107 S. W. (2d) 627 (er. ref.). See, also, Young v. Harbin Citrus Growers (Civ. App.), 130 S. W. (2d) 896 (er. ref.). These principles apply to taxes accruing and paid subsequent to the void deed as well as to those recovered by means of the sale. McCormick v. Edwards, 69 Texas 106, 6 S. W. 32.

On authority of these cases, we hold that Lieberman, claiming title under a void deed and charged with notice by their occupancy of the lands that the same was the homestead of the Burkhardts, was a volunteer when he paid the taxes and is, therefore, not entitled to recover them. However, as to the taxes paid for 1937 on the 25 acres against which he then held a vendor's lien note, as above discussed, we think Lieberman was not a volunteer. Under authority of Stone et al v. Tilley et al, supra, we hold that he is entitled to recover such part of $87.25 as was assessed against said 25 acres for the year 1937 along with his recovery of principal and interest on the vendor's lien note he bought from Holm. To that extent the judgment is reversed and remanded with instructions to the trial court to determine what part of the $87.25 taxes paid by Lieberman for 1937 was assessed against the 25 acres and to allow him recovery thereof along with the principal and interest due on the Holm vendor's lien note as above directed.

For the reasons given in discussing the taxes paid by him, Lieberman cannot recover on his claim for improvements in

good faith. Since possession by the Burkhardts of the land was notice to him of their homestead interest, one essential element in his cause of action for improvements made—that of good faith—is wanting. Mumme v. McCloskey and other authorities cited supra.

On the Burkhardts' claim for damages the jury found that the reasonable rental value of the 71 acres of land in suit from May 5, 1937, to the date of trial was $70.00. The Burkhardts prayed for $1,000.00. Without attempting to set out the testimony relating thereto, we simply say that we find no competent evidence in the record that would support a judgment on that issue. Therefore, the judgment of the trial court in favor of Lieberman and Riedel on that phase of the case is affirmed.

It follows from what we have said that the judgments of the trial court and of the Court of Civil Appeals are affirmed in so far as they deny the Burkhardts any recovery of rents against Lieberman and Riedel and in so far as they award Lieberman recovery of the city lot in Houston. Said judgments are reversed and remanded in so far as they quiet the title of Lieberman to the 25 acres, and for a determination of what part of the $87.25 taxes for 1937 paid by him was assessed against said 25 acres, with instructions to the trial court as above stated; otherwise, said judgments are in all things reversed and rendered for the Burkhardts, as against both Lieberman and Riedel.

Affirmed in part; reversed and remanded in part, with instructions; reversed and rendered in part.

Opinion adopted by the Supreme Court February 4, 1942.

Rehearing overruled March 11, 1942.