GARWOOD, Circuit Judge:
 

 This is an appeal from the bankruptcy court’s decision in an adversary proceeding which imposed an equitable lien against Texas homestead property of a Chapter 13 debtor to Secure indebtedness of $54,000 to the appellee Bank.
 

 FACTS AND PROCEEDINGS BELOW
 

 Debtor, appellant Russell Durwood Daves, is an attorney who has practiced law in Lubbock County, Texas since June 1977. The year he began his practice, debt- or and his wife purchased a vacant residential lot in Lake Ransom Canyon for $7,750 and prepared plans and specifications for construction of their home on that lot. However, these plans were not approved by the Lake Ransom Canyon “Architectural Committee”, and First Texas Savings & Loan Association therefore refused to finance the construction costs. Debtor then decided to finance the home from personal savings and cash flow of his law practice.
 

 Prior to commencement of construction work in January 1978, debtor and his wife executed a mechanic’s lien to Danny Joe Cooper of Denver, Colorado, the husband of debtor’s sister.
 
 [1]
 
 Debtor testified that he executed this mechanic’s lien to preserve the lien on the homestead in case the Lake Ransom Canyon Architectural Committee changed its mind after construction of debtor’s residence commenced and First Texas Savings & Loan Association was re-approached for financing. Contemporaneously with the execution of the mechanic’s lien contract, debtor and his wife obtained the unnotarized signature of Danny Joe Cooper on an undated release of the mechanic’s lien, which they retained. The lien was subsequently recorded. It was never transferred. There was never any subsisting indebtedness from debtor or his wife to Cooper (or any assignee of Cooper) to be secured by this lien, and neither Cooper nor any assignee of his ever did any construction work or furnished any materials respecting the property. By April 1980, debt- or and his wife had invested between $50,-000 and $55,000 in the construction of their home, which was then between sixty and seventy percent complete. This construction was financed from proceeds of the sale of a house they owned in Lubbock, from savings, from cash flow of the debtor’s law practice, and from unsecured loans obtained from Lubbock National Bank, the predecessor of appellee, RepublicBank, Lubbock (“Bank”).
 

 In April 1980, debtor’s loan file at the Bank was turned over to Bank loan officer Linda Diane Jenkins. Debtor approached Ms. Jenkins to obtain a $5,000 unsecured loan for plumbing expenses which debtor was granted on the basis of his satisfactory record of repayment of prior loans.
 
 [2]
 
 The $5,000 note was repaid by debtor to the Bank in six months, as agreed. During this initial interview, debtor informed Ms. Jenkins of the existing mechanic’s lien on the home at Lake Ransom Canyon executed by debtor so that he could obtain a permanent loan if he could not complete
 
 *1365
 
 construction through his own cash flow. Between April 1980 and March 1981, debt- or obtained a series of unsecured loans from the Bank totaling $9,000 ($8,000 was applied to residential construction and $1,000 was used to finance a vacation).
 

 In July 1981, debtor had an opportunity to purchase a building at 1111 Main Street in Lubbock which he planned to remodel and use as his law offices. Debtor approached Ms. Jenkins to discuss financing of the office building and told her that he would need $45,000, of which $10,000 would be down payment and $35,000 would cover the estimated expenses of remodeling. The parties agreed on a $55,000 line of credit which would cover the anticipated $45,000 expenditure on the new building and the previous outstanding unsecured loans. Both parties testified that they agreed that debtor would pay interest only on this obligation for one year and then convert it to a five-year installment obligation. In the discussions concerning the $55,000 line of credit, debtor and Ms. Jenkins again mentioned the idea that debtor could obtain a permanent loan on his home at Lake Ransom Canyon or that he could place a second lien on the office building after completing the remodeling if necessary. The $55,000 line of credit was finalized on January 6, 1982, and all of it was eventually drawn. It was not secured. In June 1982, Ms. Jenkins demanded security or payment on the $55,000. Up until that time, the relationship between debtor and Ms. Jenkins appeared to have been harmonious. Though debtor had not paid several three-month notes and six-month unsecured notes as they became due, he had paid interest on each of them and renewed them.
 

 In June 1982, after the Bank demanded payment on its note, the release of the mechanic’s lien was recorded in the office of the County Clerk of Lubbock County, Texas. Debtor did not inform the Bank of the release. The debtor testified at trial that his wife had dated the release and had it notarized and recorded without his knowledge or consent. His wife did not testify. In October 1982, when debtor attempted to obtain a loan from the real estate department at the Bank in order to repay the commercial loan department on the $55,000 note, the real estate department refused to make the loan in the absence of a valid lien against the residential homestead.
 

 Debtor then told Ms. Jenkins that he would give the Bank a lien against the building at 1111 Main Street. However, arrangements for this lien fell through when debtor refused to sign documents Ms. Jenkins had prepared, which included a $55,000 demand note bearing interest at the Bank’s floating prime plus one percent and a deed of trust which recited that the lien would be secondary to a first vendor’s lien and included a homestead disclaimer. Debtor evidently objected to the fact that it was a demand note rather than a five-year installment obligation and to the wording of the homestead disclaimer.
 

 Debtor eventually obtained a $55,000 loan from the First National Bank in Lubbock to pay off his loan at the Bank. This loan was secured with a second lien against the building at 1111 Main Street. However, these funds were not used to repay the Bank. Debtor says that they were used in the remodeling of the building at 1111 Main Street.
 

 When debtor refused payment on the Bank’s note, the Bank initiated a lawsuit against debtor in state court. Debtor then filed a Chapter 13 petition in the bankruptcy court of the Northern District of Texas on April 22, 1983. Debtor’s Chapter 13 plan categorized the $55,000 principal indebtedness to RepublicBank as unsecured. The Bank filed this adversary proceeding, contending that a constructive trust should be imposed by the court against debtor’s residence homestead and the office building to secure at least $54,000 of the $55,000 indebtedness. The bankruptcy court found the two properties were, respectively, the residence and business homestead of debt- or and his wife, rejected the Bank’s argument that a constructive trust should be imposed against either the residence home
 
 *1366
 
 stead property or the office building, but found that an equitable lien in the amount of $54,000 existed in favor of the Bank against both properties. Debtor appeals from this judgment.
 

 DISCUSSION
 

 Constructive Trust
 

 In the adversary proceeding below, the Bank sought to have a constructive trust imposed by the bankruptcy court against debtor’s residence and business homestead to secure its indebtedness. A constructive trust is an equitable remedy which infers a fiduciary-like relationship respecting a transaction to prevent unjust enrichment arising from abuse of a confidence-inducing association or from fraud.
 
 Harris v. Sentry Title Company, Inc.,
 
 715 F.2d 941, 946 (5th Cir.1983),
 
 modified,
 
 727 F.2d 1368 (5th Cir.1984),
 
 cert. denied,
 
 — U.S. —, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). The bankruptcy court refused to impose a constructive trust against debt- or’s homestead property because it understood such a device to impress an ownership, as opposed to a security, interest in the property, which the Bank neither sought nor was entitled to. We agree that a constructive trust may not be imposed in this case, but for a different reason. A constructive trust may not be judicially imposed to secure a lien against Texas homestead property when the constitutional
 
 [3]
 
 and statutory
 
 [4]
 
 requirements for fixing such a lien have not been met.
 

 The Bank contends that a constructive trust should be imposed in this case because a confidence-inducing relationship had developed between the debtor and the Bank as debtor had obtained and repaid a number of loans over the years, which induced Ms. Jenkins to make additional unsecured loans on the strength of debtor’s promise to secure those loans with liens on properties being improved. It contends that the breach of these promises, upon which the Bank had relied, justifies a constructive trust.
 

 We disagree. The bankruptcy court found that “at least until the release of the mechanic’s lien was recorded [June 9, 1982] I can find nothing in the record which in any manner shows that the bank was being defrauded by Davis.” No more than nine thousand dollars of the outstanding debt to the Bank had been loaned or applied in respect to the residence, and the last advance in that connection was made before July, 1981. Indeed, the last advance of any kind by the Bank to debtor seems to have been made well prior to June 9, 1982. Moreover, there is no evidence of any fraud or breach of confidence by debtor’s wife.
 

 Texas courts have consistently held that a valid lien cannot be created on homestead property in any manner other than in strict compliance with the requirements of the
 
 *1367
 
 statutes and constitution.
 
 Toler v. Fertitta,
 
 67 S.W.2d 229, 230 (Tex.Comm’n App. 1934, holding approved) (settled law of Texas that any attempt to create lien or mortgage on homestead to secure debt, regardless of method or form used, except as provided by constitution, is utter nullity and never becomes effective to any extent);
 
 Collier v. Valley Building & Loan Association,
 
 62 S.W.2d 82, 84 (Tex.Comm’n App. 1933, holding approved) (“Constitution and statutes zealously guard the rights of a homestead, and a materialman’s and mechanic’s lien thereon can be acquired only by a strict compliance with the provisions thereof”). To judicially impose a lien on homestead property in the form of a constructive trust based merely upon an oral promise
 
 [5]
 
 to comply with the statutory requirements would totally undermine the homestead protection provided by the homestead provisions of the Texas statutes and constitution. No Texas court has countenanced such a result, and we decline to do so.
 

 Equitable Lien
 

 An equitable lien may, in a proper case, arise when circumstances indicate that the parties intended specific property to secure payment of a debt.
 
 Citizens’ Co-op Gin v. United States,
 
 427 F.2d 692, 695 (5th Cir.1970);
 
 William Clay, Jr. Foundation v. United States,
 
 233 F.Supp. 628, 631 (N.D.Tex.1964) (citing
 
 William v. Greer,
 
 122 S.W.2d 247, 248 (Tex.Civ.App.—Dallas 1938, no writ)). The fundamental element necessary to the creation of an equitable lien is the existence of an express or implied contract.
 
 Bray v. Curtis,
 
 544 S.W.2d 816, 819 (Tex.Civ.App.—Corpus Christi 1976, writ ref’d n.r.e.). The bankruptcy court found that the parties did intend that a lien be created in favor of the Bank against either debtor’s residence or business property to secure the Bank’s loan if the debtor were unable to otherwise pay the debt, and that this intention continued through the complete funding of the $55,-000 line of credit. But, after the demand for payment of the $55,000 was made, the debtor prevented either of these properties from being available for lien purposes by releasing the mechanic’s lien against the residence
 
 [6]
 
 and impressing a lien against the office building in favor of First National Bank, which encumbered any equity which might otherwise have been available to the Bank. The bankruptcy court stated that “right and justice mandates that an equitable lien be given to the bank.”
 

 However, the bankruptcy court did not consider whether the doctrine of equitable liens would apply when homestead property was involved. This question has not been specifically answered by the Texas courts. However, Texas law which protects homestead property from liens militates strongly against the establishment of any lien which is not created according to statutory and constitutional requirements. According to article 16, section 50 of the Texas constitution, “no mortgage, trust, deed,
 
 or other lien
 
 on the homestead shall ever be valid except, for the purchase money therefor, or improvements made thereon, as hereinbefore provided_” (Emphasis added). Under the same constitutional provision, a lien for work or materials used for construction of improvements on homestead property will exist “only when the
 
 *1368
 
 work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead .... ” Texas Revised Civil Statutes Article 5460 tracks the constitutional provisions and states additional requirements for obtaining a lien for improvements against a homestead:
 

 “When material is furnished, labor performed, or improvements as defined in this title are made, or when erections or repairs are made upon homesteads, if the owner thereof is a married man, then to fix and secure the lien upon the same it shall be necessary for the person or persons who furnish the material or perform the labor, before such material is furnished or labor is performed, to make and enter into a contract in writing, setting forth the terms thereof, which shall be signed by the owner and his wife, and privily acknowledged by her, as is required in making sale of homestead. And such contract shall be recorded in the office of the county clerk in the county where such homestead is situated, in a well bound book to be kept for that purpose ....”
 

 In
 
 Fidelity Savings & Loan Association of Port Arthur v. Baldwin,
 
 416 S.W.2d 482 (Tex.Civ.App.—Beaumont 1967, writ ref’d n.r.e.), the court of civil appeals reversed the judgment of the trial court, which had created an equitable lien against homestead property in favor of the creditor. In that case, the defendant’s mechanic’s lien against homestead property was unenforceable because the contractor had abandoned construction before substantial performance of the contract, which is required before the lien attaches to a homestead. That court granted the defendant a money judgment but held that “no lien, equitable or otherwise,” existed to secure it. For, “[a] lien can exist upon a homestead only when created in accordance with the Constitution of this State.”
 
 Id.
 
 at 484. Though that court did not go so far as to hold that an equitable lien may never be imposed against homestead property, it did not allow such a lien to stand and stressed the fact that for a lien to be valid against homestead property it must be created in compliance with constitutional requirements.
 

 Likewise, in
 
 Tezel & Cotter v. Roark,
 
 301 S.W.2d 179 (Tex.Civ.App.—San Antonio 1957, writ ref’d), the court refused to create an equitable lien in favor of the holder of a mechanic’s lien where there had been no technical compliance with article 5460. Although the creditors in
 
 Tezel
 
 admitted that they had no lien against homestead property because the contract had not been signed by the wife in accordance with article 5460, they argued that a lien existed against the fund tendered to court by the owner for payment to various creditors on improvements made pursuant to a contract. The court denied such a lien, holding that “[mjechanic’s and materialmen’s liens exist by force of statutes. A statutory lien is not a creature of equity, and unless the claimant falls within or follows the demands of the statute, he is not aided by the plea that he did as much as he could.”
 
 Id.
 
 at 181. That court cited
 
 Colleps v. George W. Smith Lumber Co.,
 
 185 S.W. 1043 (Tex.Civ.App.—Beaumont 1916), a similar case, in which the court held that no equitable lien could be impressed on funds tendered to the court to pay for improvements on homestead property because creditors had not complied with the requirements of the predecessor statute to article 5460. That court stated:
 

 “Equity follows the law, and neither by the contract or the agreement or any provision thereof could a lien arise upon the building or grounds, and therefore we are unable, by any process of reasoning, to find how any equitable lien could arise against such funds. Appellants could have protected themselves by a compliance with the statute with reference to fixing liens in such cases, and, as they have not seen fit to do so, they must abide the consequences.”
 
 Id.
 
 at 1044.
 

 One requirement of the constitutional and statutory homestead provisions deserves special mention. “In the clearest
 
 *1369
 
 possible language, Tex. Const, art. 16 § 50 (Supp.1974-1975) requires the joinder of the wife in the creation of a lien for improvements upon a homestead,” as does article 5460.
 
 Great Eastern Life Insurance Co. v. Jones,
 
 526 S.W.2d 268, 269-70 (Tex.Civ.App.—Beaumont 1975, writ ref’d n.r.e.). In that case, the debtor had executed a note and deed of trust with the creditor for improvements and payment of delinquent taxes on a residential homestead, but his common law wife did not join in either instrument. When debtor defaulted after the improvements had been made and the taxes had been paid, the creditor foreclosed and then instituted a trespass to try title action against the debtor. The court of civil appeals affirmed the trial court’s judgment which declared that all liens and claims held by the creditor were null and void as to the property and that, though the creditor was entitled to a money judgment, he could not recover the land in question from the debtor and his wife. That court rejected the creditor’s argument that the lien should be enforceable to the extent it was given to secure a party paying delinquent taxes as “[s]ueh a holding would effectually emasculate this homestead exemption.”
 
 Id.
 
 at 270. That court held that “[the creditor] is deprived of its lien solely because of the failure to follow the Constitutional and statutory provisions with reference to the fixing of the lien upon the homestead.”
 
 Id. See also Tezel & Cotter v. Roark,
 
 301 S.W.2d 179, 181 (Tex.Civ.App.—San Antonio 1957, writ ref’d) (creditors concede that no lien against homestead property exists because contract had not been signed by wife in accordance with article 5460). In this case, the wife did not join in any of the representations to Ms. Jenkins regarding the ability or willingness to place a lien on the family homestead. See
 
 Burkhardt v. Lieberman,
 
 138 Tex. 409, 159 S.W.2d 847, 851 (1942) (“acts or omissions alleged to constitute estoppel must be those of both the husband and the wife”; if wife is not estopped to claim homestead, husband cannot be);
 
 Lincoln v. Bennett,
 
 138 Tex. 56, 156 S.W.2d 504, 507 (1941). In fact, her action in releasing the mechanic’s lien indicated her desire not to place a lien, at least on the residential homestead.
 

 Texas courts have consistently held that, for a lien to be imposed upon homestead property, the constitutional and statutory requirements must be met. Though they were not met in this case, the Bank seeks an equitable lien imposed on homestead property because the debtor agreed to comply with the requirements to place such a lien in the future, despite the fact that the Bank knew it was making unsecured loans on homestead property. To allow a lien to be imposed on homestead property in the absence of compliance with constitutional and statutory requirements merely by calling it an equitable lien, based on an oral agreement to place a proper lien, would render the constitutional and statutory requirements for imposing liens on homestead property almost meaningless. No Texas decision supports such a result. We hold that the bankruptcy court erred in imposing an equitable lien on debtor’s business and residential homestead properties for the $54,000 advanced to debtor for improvements to those properties based upon debtor's oral agreement to provide a valid lien.
 

 Implied Vendor’s Lien
 

 Although conceding that no case directly supports imposition of an equitable lien on homestead property, appellee, Bank, argues that a recent Texas Supreme Court case,
 
 McGoodwin v. McGoodwin,
 
 671 S.W.2d 880 (Tex.1984), impliedly approves such an equitable lien in this situation. In
 
 McGoodwin,
 
 the parties agreed upon a court approved, written property settlement as part of a divorce, which awarded the husband a parcel of community property occupied as their homestead for which he agreed to pay consideration for the wife’s one-half interest, the wife agreeing to deed her half interest to him upon payment of all the agreed consideration. When the consideration was not paid, the wife brought suit to force sale of the land, which the husband contended was exempt from sale as his homestead. The Texas
 
 *1370
 
 Supreme Court stated that, as the property-settlement agreement was one which directed payment of consideration for the conveyance of an interest in real estate, its construction would be dictated by the law regarding contracts for the sale of land. As “established Texas law holds that when no express lien is reserved in a deed and the purchase money is not paid, a lien nevertheless arises by implication in favor of the vendor to secure payment of the purchase money,”
 
 id.
 
 at 882, the divorced wife had a vendor’s lien against the undivided one-half interest in the property which she “sold” to her husband in the divorce settlement. Such an implied vendor’s lien is superior to a claim of homestead by the vendee.
 
 Id.
 
 However, the Court held that she had no lien against the other half interest.
 
 Id.
 
 at 883.
 

 The Bank’s main theory for recovery based upon an equitable lien relies upon appellant’s representations that he would place a valid mechanic’s lien on the homestead properties for the cost of improvements to them. It attempts to analogize this mechanic’s lien to a vendor’s lien which arises by implication when a portion of purchase money is not paid for property conveyed. This analogy is not apt. As indicated, the Texas statutes and constitutional provisions respecting homestead specify the types of indebtedness for which there may be a valid lien on the homestead. Liens for any other purpose are invalid.
 
 Burkhardt v. Lieberman,
 
 138 Tex. 409, 159 S.W.2d 847, 850 (1942).
 
 [7]
 
 The authorization for homestead liens to secure sums “for work and material used in constructing improvements” is expressly burdened by the requirement that it is applicable “only” where the specified formalities are followed. Where these formalities are not followed, there can be no lien on homestead for the cost of improvements. By contrast, the authorization for “purchase money” homestead liens is not burdened by any required formality. See Tex.Const. art. 16 § 50; Tex.Rev.Civ.Stat. arts. 3839, 5460. Consequently, purchase money liens on homesteads require no more formality than purchase money liens on other real estate. Texas generally recognizes the implied vendor’s lien, and hence it applies to homesteads. See McGoodwin.
 
 [8]
 

 However, $10,000 of the money advanced to debtor by the Bank was used as a down payment for the office building. The Bank claims it should therefore have an implied vendor’s lien on this property, at least to the extent of the $10,000 which was used as a portion of the purchase money. We remand for the limited purpose of allowing the bankruptcy court to consider whether the Bank has such an implied vendor’s lien on the office building. Such a lien, however, cannot be extended to the residence.
 
 [9]
 

 See Baxter v. Crow,
 
 133 S.W.2d 187, 188 (Tex.Civ.App.—San Antonio 1939, writ dism’d judgmt cor.) (an existing valid lien upon family homestead could not be extended by contract to include the existing business homestead as additional security for the debt against the family homestead only);
 
 Hayes v. First Trust Joint Stock Land Bank of Chicago,
 
 111 S.W.2d 1172 (Tex.Civ.App.—Fort Worth 1938, writ dism’d w.o.j.) (an existing lien upon part of a residential homestead could not extend to another part of the homestead subsequently purchased and not charged with the debts secured). Further, the possible lien on the office building would only be to the extent of the
 
 purchase
 
 money advanced. It would be based upon principles regarding implied vendor’s
 
 *1371
 
 liens as expressed in
 
 McGoodwin,
 
 and in statements in Texas opinions which apparently extend such an equitable lien to one who advances purchase money under an oral agreement that the purchaser will execute a mortgage or give a lien as security.
 
 See, e.g., Woods v. West,
 
 37 S.W.2d 129, 132 (Tex.Comm’n App.1931, holding approved);
 
 Floyd v. Hammond,
 
 268 S.W. 146, 147 (Tex.Comm’n App.1925, holding approved).
 
 [10]
 
 We authorize the bankruptcy court, in its discretion, to reopen for additional evidence on this one issue.
 

 CONCLUSION
 

 We hold that the Bank has neither a constructive trust nor a lien for funds advanced for improvements on either the residence or the office building, and that it has no lien of any kind on the residence. On remand the bankruptcy court may consider whether the bank has an implied vendor’s lien on the office building to the extent only of funds advanced by it for the purchase thereof.
 

 Accordingly, the judgment below is REVERSED and the case is REMANDED for further proceedings consistent herewith.
 

 [1]
 

 . The only way debtor could secure such a lien on his homestead was to execute this mechanic’s lien prior to commencement of construction.
 
 See
 
 Tex.Stat.Ann. art. 5460 (Vernon 1958).
 

 [2]
 

 . Debtor's dealings with the bank began in 1976. He had successfully repaid several unsecured loans as well as secured loans.
 

 [3]
 

 . Article 16, § 50 of the Texas Constitution states in pertinent part:
 

 "The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead .... No mortgage, trust, deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as herein-before provided ...."
 

 [4]
 

 . Tex.Rev.Civ.Stat.Ann. art. 5460 states in pertinent part:
 

 “When material is furnished, labor performed, or improvements as defined in this title are made, or when erections or repairs are made upon homesteads, if the owner thereof is a married man, then to fix and secure the lien upon the same it shall be necessary for the person or persons who furnish the material or perform the labor, before such material is furnished or such labor is performed, to make and enter into a contract in writing, setting forth the terms thereof, which shall be signed by the owner and his wife, and privily acknowledged by her, as is required in making sale of homestead. And such contract shall be recorded in the office of the county clerk in the county where such homestead is situated, in a well bound book to be kept for that purpose
 
 ...."
 

 [5]
 

 . A different situation might well be presented if a misrepresentation or fraud related to a factual matter which would affect the creditor’s knowledge or understanding of whether a particular property was properly claimed as homestead. See, e.g.,
 
 Lincoln v. Bennett,
 
 138 Tex. 56, 156 S.W.2d 504 (1941). However, we need not decide whether such a situation would call for imposition of a constructive trust because, in this case, the Bank knew at all times that the property involved was being properly claimed as homestead, that it had not complied with the statutory and constitutional requirements for placing a lien on homestead property, and that it had therefore made unsecured rather than secured loans. Breach of a promise to comply with statutory and constitutional requirements does not and cannot affect the fact that homestead is properly claimed or that the statutory and constitutional requirements for imposing a lien have not been met.
 

 [6]
 

 . It is highly doubtful that the mechanic’s lien, which was essentially a sham, could have provided the Bank a valid lien on the residence even if it had not been released.
 

 [7]
 

 . For narrow (and here inapplicable) "exceptions” see
 
 Lincoln
 
 v.
 
 Bennett,
 
 156 S.W.2d at 505.
 

 [8]
 

 . Moreover, the implied vendor’s lien customarily encumbers the property before the homestead interest attaches. While this was not strictly true in
 
 McGoodwin,
 
 there at least the husband’s homestead interest as a single person, unburdened by his wife’s equal homestead and ownership rights in the same property, did not come into existence before the implied vendor’s lien. Here, by contrast, the debtor and his wife had homestead rights in the residence well before any arrangements with the bank in respect thereto.
 

 [9]
 

 .Clearly, there was no implied vendor’s lien for the residence purchase, as no bank funds were advanced or used for that.
 

 [10]
 

 . These cases state settled Texas law:
 

 “(a) Where purchase money of land is advanced under oral agreement that the purchaser will execute a mortgage or give a lien as security, such agreement is enforceable in equity as a mortgage.
 

 "(b) Until purchase money for property is paid, the purchaser has no such interest therein as would support a homestead claim against the person who advanced the purchase money under the agreement whereby he was to have a lien.”
 
 Woods v. West,
 
 37 S.W.2d 129, 132 (Tex.Comm.App.1931, holding approved).
 

 We note, however, that in these cases an instrument evidencing the agreement was eventually executed.
 

 We do not hold that the Bank has, or does not have, an implied vendor's lien on the office building to the extent of the purchase money it advanced. The bankruptcy court will address that question in the first instance.