In re Robert Q. ROTH, Jr., Debtor.

Gary V. Skiba, Trustee, Movant,

v.

Internal Revenue Service, United States of America, Robert Q. Roth Jr. and Sally Roth, Respondents.

Bankruptcy No. 01–10777.
Adversary No. 03–1171.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 1, 2003.

452

Gary V. Skiba, Erie, PA, Trustee Pro Se.

Gerald A. Role, Washington, DC, for Internal Revenue Service, United States of America.

Michael J. Graml, Erie, PA, for Robert Q. Roth, Jr.

Michael J. Visnosky, Erie, PA, for Sally Roth, Now by Marriage, Sally Smith.

Lawrence C. Bolla, Erie, PA, for Anne Kulhanek, Susan Uht and Barbara Smith.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Robert Q. Roth, Jr. ("Debtor") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on April 13, 2001. By Order dated January 9, 2002, the case was converted to a proceeding under Chapter 7. Gary V. Skiba, Esq. ("Trustee") serves as Chapter 7 Trustee.

The Internal Revenue Service, United States of America ("IRS") filed Proof of Claim No. 21 (the "Claim"). The Claim is in the total amount of $398,423.90, which is broken down as a secured claim of $295,789.10, an unsecured priority claim of $98,067.57, and a general unsecured claim of $4,567.23. The unsecured priority and general unsecured portions of the Claim arise from unpaid income tax liability. The secured portion of the Claim is an Estate Tax liability that has its genesis in a decedent's Federal Estate Tax Return, Form 706, filed for the estate of Robert Q. Roth, Sr., the Debtor's father.

Before the Court is the Trustee's MOTION FOR DETERMINATION OF TAX STATUS AND OBJECTION TO CLAIM.

### Undisputed Facts

Debtor and his father owned Roth Cadillac, Inc., an automobile dealership in Erie, Pennsylvania. Debtor owned 22 percent of the stock and his father owned 78 percent or 286 shares. Debtor's father died on June 10, 1991 and, under the terms of his will, his stock in Roth Cadillac, Inc. went to Debtor, who then became the sole shareholder.

On March 11, 1992, the estate of Robert Q. Roth filed a Federal Estate Tax Return showing a total estate tax liability of $537,157. A payment of $320,791 was paid with the return, leaving a balance of $216,366. A subsequent audit of the return resulted in additional liability of $32,299 which was assessed in December, 1994. The estate tax balance is therefore $248,665 plus interest.

As provided for in the Internal Revenue Code ("IRC"), the executors of the estate elected to defer payment of the balance of the tax due. The executors of the estate executed a document entitled AGREEMENT RE SPECIAL LIEN FOR ESTATE TAX DEFERRED UNDER SECTION 6166 ("Agreement") on November 4, 1994 which subjects the 286 shares of Roth Cadillac, Inc. stock to a lien in favor of the IRS in the amount of the deferred taxes plus interest in accordance with IRC § 6324A. The Agreement provides that the value of the 286 shares, both at the time of decedent's death and at the time of the Agreement, was $963,334. The IRS accepted the Agreement and filed notice of the § 6324A lien in Erie County in November, 1994.

Subsequently, on July 27, 1998, Roth Cadillac, Inc. and the Debtor entered into an Asset Purchase Agreement with Miller Management Group, Inc. ("Miller"). The Asset Purchase Agreement provided for the sale of all of the assets of Roth Cadillac, Inc. As part of the sale, Debtor and

Miller executed a separate Consulting Agreement which provided that Debtor would serve as president of and provide consulting services to the car dealership for a seven (7) year term. It was agreed that Debtor would receive $200,000 annually for the first five years and $150,000 for each of the last two (2) years or a total of $1,300,000. The Consulting Agreement provides for Debtor to receive a minimum of $1,050,000 even if Miller terminates his services or he becomes disabled.

The within bankruptcy case was filed on April 13, 2001. The Trustee is in the process of liquidating the bankruptcy estate. The Trustee presently holds $370,000 from settlement of litigation with Miller over the balance due the Debtor under the Consulting Agreement. Another possible asset of the bankruptcy estate is an Individual Retirement Account ("IRA") held in the name of the Debtor in the approximate amount of $240,000. Debtor attempts to claim the IRA as exempt and Debtor's ex-spouse claims an interest in the IRA. Separate litigation over disposition of the IRA is pending.

### Assertions

The Trustee asserts that to the extent the IRS has a lien, the lien arises under IRC § 6324A; that the lien covers only the 286 shares of common stock of Roth Cadillac, Inc. and does not extend to the assets of Roth Cadillac, Inc. or to the proceeds thereof or to the consulting fees which were the subject of the settlement between the Trustee and Miller giving rise to the $370,000 held by the Trustee.

The Trustee further asserts that the IRC § 6324A lien does not extend to any proceeds which the Trustee may recover from Debtor's IRA.

The Trustee further posits, and the IRS agrees, that the IRS is not entitled to priority status for the estate tax. The

Claim for estate tax is either a secured claim or a general unsecured claim.

The IRS has three theories under which it claims an interest in assets recovered by the Trustee. It first asserts that IRC § 6324(a)(1) creates a lien on the gross estate of the decedent for the unpaid estate tax liability and, therefore, to the extent that the Trustee holds property, which the Debtor acquired from the decedent's estate or with the proceeds of the decedent's estate, its lien attaches to such property.

Second, the IRS asserts that IRC § 6324(a)(2) provides that the beneficiaries of the estate who receive property included in the gross estate are personally liable for the tax to the extent of the value of the property they received as of the date of the decedent's death. Thus, the IRS posits that a lien attaches to all of the Debtor's property.

Finally, the IRS asserts a lien under IRC § 6324A. The IRS acknowledges that the 286 shares of Roth Cadillac, Inc. were the only property identified as subject to the § 6324A lien. The IRS posits that "[b]ecause debtor converted the value of that stock to his own benefit by selling the underlying assets and using some of the proceeds for his personal benefit, equity requires that the lien attach to the assets of the corporation and the proceeds from their sale."

### Discussion

#### Liens Under the IRC § 6324(a)(1) and (a)(2)

■ IRC § 6324 creates an automatic lien upon a decedent's gross estate for 10 years from the date of death in an amount equal to the total estate tax due. 26 USCA § 6324(a)(1); *In re C.R. Druse, Sr., Ltd.*, 82 B.R. 1013, 1014 (Bankr.D.Neb. 1988); *Evelpis Properties v. United States*,

1997 WL 382122 (S.D.Ohio Apr. 15, 1997); *Noble v. Soler,* 1997 WL 873539 (S.D.Ohio Dec. 17, 1997). The lien imposed by the statute remains with the property of the gross estate even after the property is subsequently transferred to a third party. 26 U.S.C. § 6324(a)(2); *Evelpis Properties,* 1997 WL 382122 at *2; *Noble,* 1997 WL 387539 at *3.

Where a decedent's estate consists largely of an interest in a closely held business, the executor may elect to pay the estate tax liability in installment payments as permitted by IRC § 6166.

When an estate makes an installment payment election, the IRS, as permitted by IRC § 6165, requires a surety bond to secure payment of the tax. Instead of furnishing a surety bond, the estate may choose to elect the special lien provided for in IRC § 6324A.

The election must be accompanied by an agreement which designates the property that will be encumbered by the § 6324A lien.

The Special Lien under § 6324A is in lieu of the regular estate tax lien under § 6324. 11 U.S.C. § 6324A(d)(4); *Noble,* 1997 WL 873539 at *4–5; *Druse,* 82 B.R. at 1016.

The IRS accepted the Agreement provided for by § 6324A and filed its Notice of Federal Estate Tax Lien as required by § 6324A(d)(1). Accordingly, once the § 6324A lien was filed, it primed the § 6324(a)(1) and (a)(2) interests and liens under § 6324(a)(1) and (a)(2) no longer exist.

### Extent of IRC § 6324A Lien

■ A lien under § 6324A attaches the specific property listed in the Agreement. The property upon which the IRS has a lien is the property which is "designated" in the Agreement. 26 U.S.C.

§ 6324A(b)(1). The specific property made subject to the § 6324A is subject to negotiation with the IRS. The IRS may require that the designated property have a value equivalent to the deferred tax plus interest. The IRS accepted and was satisfied with the representations made by representatives of the decedent's estate that the property being offered, 286 shares of Roth Cadillac, Inc. stock, had a value of $963,334, far in excess of the deferred tax plus interest. The specific property designated in the Agreement and in the Notice of Federal Estate Tax Lien filed by the IRS is:

> 286 shares of Roth Cadillac, Inc. a Pennsylvania corporation, with its principal office at 5711 Peach Street, Erie, Pennsylvania, 16508.
>
> Representing 77.929% of the outstanding shares of Roth Cadillac, Inc.

The assets of Roth Cadillac, Inc. have been sold and the stock is now worthless. The IRS asserts that since the assets of Roth Cadillac, Inc. were sold, its lien on the stock of Roth Cadillac, Inc. should attach to the assets of the corporation and the proceeds of their sale.

■ A lien on the outstanding shares of stock of a corporation does not create a lien against the actual corporate assets. *Bromley v. Sobol,* 101 F.Supp. 116 (D.Colo. 1951). As stated in *Fletcher on Corporations:*

> A judgment against a corporation is not against the shareholders and does not affect their property, although it is res adjudicata or evidence in an action to enforce against them a statutory personal liability for corporate debts. The judgment against one is not a lien on the property of the other, and a lien on corporate property is not affected by stock ownership or transfer nor does a lien on the outstanding stock of the cor-

poration to secure the debt of an individual shareholder owning such shares create a lien against the actual corporate assets.

1 *Fletcher Cyclopedia of Private Corp., § 38.* (2003) (footnotes omitted).

■ The IRS asserts that since the Debtor converted the value of the shares to his own benefit by selling the assets, "equity requires" that its lien attach to the assets and of the corporation and the proceeds thereof. "When the rights of a party are clearly established by defined principles of law, equity should not change or unsettle those rights. Equity follows the law." *First Federal Savings and Loan Ass'n. of Lancaster v. Swift,* 457 Pa. 206, 210, 321 A.2d 895, 897 (1974). "A statutory lien is not a creature of equity." *In re Daves,* 770 F.2d 1363, 1368 (5th Cir.1985). Unless a claimant falls within or follows the demands of the statute, the party is not aided by a plea in equity. *Id.* As stated in *Scott v. Waynesburg Brewing Co.,* 256 Pa. 158, 162, 100 A. 591, 592 (Pa.1917):

> The existence, validity, and extent of a judgment *lien* are matters purely legal, dependent upon *statutory* provisions; and if the lien fails at law, it cannot be aided in *equity.* 1 Beach on Modern *Equity,* § 288. Again, whenever the rights or situation of parties are clearly defined and established by law, whether it be common or *statutory, equity* has no power to change or unsettle those rights or that situation, but in all such instances the maxim, "Equitas sequitur legem," is strictly applicable. *Magniac et al. v. Thomson,* 15 How. (56 U.S.) 281, 14 L.Ed. 696.

*Id.*

The tax lien in this case is a purely statutory creation and cannot be extended under a theory of equity.

### Conclusion

The lien of the IRS is limited to a lien under IRC § 6324A in the 286 shares of Roth Cadillac, Inc. stock. Since the shares are without value, the claim of the IRS for taxes arising from the decedent's estate of Robert Q. Roth, Sr. in the amount of $295,789.10 is a general unsecured claim. The Trustee does not contest the IRS's unsecured priority claim of $98,067.57 and the IRS's general unsecured claim of $4,567.23 related to Debtor's income tax liabilities. Accordingly, the IRS shall be allowed an Unsecured Priority Claim in the amount of $98,067.57 and a general unsecured claim in the amount of $300,356.33 ($4,567.23 + $295,789.10).

An appropriate Order will be entered.

### ORDER

This 1 day of October, 2003, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED that the claim of the Internal Revenue Service, United States of America ("IRS") is fixed as a claim in the total amount of $398,423.90, itemized as follows:

Unsecured Priority Claim    $ 98,067.57
General Unsecured Claim    $300,356.33

It is FURTHER ORDERED that Claim No. 21 filed by the IRS is adjusted accordingly.